Lessee of GEORGE WOODS *against* JOHN GALBREATH.·

The usage of the land office and the practice of the deputy surveyors in early times to make surveys without warrants, on being paid certain sums of money, will be received in evidence.

EJECTMENT for 70 acres of land West Pennsbro' township.

The lessor of the plaintiff claimed the lands in question, under an early settlement made thereon in 1744, by his father, James Woods; two surveys made by George Smith, a deputy, employed by Thomas Cookson, esq. deputy surveyor of the district, in 1745, said to contain 235¾ acres and allowance, without warrant; a receipt of Lynford Lardner' esq. receiver general, for 17*l.* 18*s.* on account of lands in Pennsbro, township, by the hands of Thomas Cookson, esq. dated 24th May 1746; a second receipt of Edmund Physic, esq. receiver general, for 30*l.* on account of his land in the said township; a warrant to himself for 235, acres including his improvement, and a survey made by Thomas Cookson's deputy in 1745, for his father; and a re-survey by William Lyon thereon, containing 258 acres 32 perches, on the 31th October 1771; and his father's will.

The defendant claimed under a warrant to his father, James Galbreath, for 150 acres, adjoining his dwelling plantation, in East Pennsbro' township, dated 15th April 1763; a survey thereon of 222 acres and 127 perches, on the 2d June 1763; a patent dated 12th November 1763, and his father's will. On a *caveat* filed by James Galbraith against the acceptance of Wood's survey, the Board of Property, upon a hearing on the 29th May 1775, rejected part of the original survey, the same being said not to have been returned, and made without warrant, he having no improvement thereon.

The plaintiff offered William Lyon, esq. as a witness to prove the general usage of the land office, and of the deputy surveyors in that district, in early times, in making surveys without warrants, agreeably to instructions received from the secretary of the land office, on 5*l.* per hundred acres being paid to such deputies, besides the surveying fees; that surveys thus made had uniformly been sanctioned by the

commissioners of property; and that many titles to valuable estates depended on surveys of this nature, subsequent warrants having usually been taken out by the deputy surveyors, to whom the money had been paid.

The defendant's counsel objected thereto, and insisted that such usage could not with propriety be received in evidence. Surveys made without the proper and usual authorities were mere private acts, and could confer no right whatever. The defendant claims under a patent near thirty-five years old. This very point was determined between the same parties on a former trial in this court on the 1st June, 1781, and M'Kean, C. J. then held, that a survey under such circumstances gave no title, and was wholly invalid; and the plaintiff thereupon suffered a non-suit.

The plaintiff's counsel answered, that true it was, such was the event of the former cause, and such were the sentiments of the court shortly after the revolution, and in 1781. But a more minute consideration of the settlement of the country, and of the circumstances attending it, had since produced a different doctrine. So of improvements, against which the courts at first much inclined; but, on being afterwards encouraged by the policy of the legislature, it became their duty, and it was now their practice to protect them. But there was little occasion to go into a system of reasoning upon this subject.

In the case of the lessee of Samuel Turbett v. William Nicholls and Elizabeth Vance, tried at Nisi Prius at Chambersburgh, on the 27th May 1789, the former question was again revived, on the deposition of General John Armstrong being offered in evidence by the defendants, to prove the custom now contended for. The adverse counsel relied on the authority of the court's decision between these parties in 1781, as conclusive. But after full argument, the deposition was ordered to be read in evidence, and a copy of it is now in court.

The Chief Justice then expressed himself thus : " Cases in England are not strictly applicable to the modes of granting land by the late proprietaries. Such titles are founded on usage, and usages, if reasonable and beneficial to the people, form a law. The law has great regard to the practice and usage of the people, the law itself being nothing else but common usage. 2 Mod. 238. So of the custom of a parish, that tenant for years may reap and carry away his way-going crop after the determination of his lease." Doug. 191.

By the court. The evidence appears to us to be admissible. The case of Turbett's lessee v. Vance, in 1789, is expressly in point. Courts of justice are frequently governed in their determinations by the customs of the country, as in the case of administrators selling in early times improved and even warranted and surveyed lands, as mere chattels, without any order of Orphan's Court. So of the practice of the land office, (Dall. 7) under which a great part of the country has been settled, though not strictly regular in itself. Surveys under the usage, if established, cannot be considered as private acts. They are the proceedings of known proprietary officers, duly authorized by their principals to receive money for them as their agents, and to make appropriations of land by surveys. The practice tended to unite the proprietary and individual interests, and contributed greatly to the ease of the people.

The characteristics of a good usage are, that it be generally used and approved; and, according to the case cited by the Chief Justice, in 2 Mod. 238, " the law is but common usage, with which it complies and alters with the exigency of affairs."

The witness was accordingly received, and the usage opened was by him fully proved.

Verdict for the plaintiff.

Messrs. DUNCAN and SMITH, *pro quer.*
Messrs. HAMILTON and BOWIE, *pro def.*

On the return of the postea, a rule to show cause why a new trial should not be granted, was obtained on the ground of great negligence and laches in the lessor of the plaintiff, in not commencing his second ejectment for many years after the first non-suit. On full argument, wherein the opinion of the court, on giving the usage in evidence was not questioned, the court unanimously discharged the rule in bank March 24th, 1800, and gave judgment for the plaintiff.

Messrs. INGERSOLL and DUNCAN, *pro quer.*
Mr. E. TILGHMAN, *pro def.*