Messrs. Ingersoll, Kidd and Hall, *pro quer.*
Messrs. Duncan and D. Smith, *pro def.*

────────

Lessee of ELEANOR DE HAAS and JOHN PHILLIP DE HAAS *against* JOSIAH GALBREATH.

One putting in two applications in the lottery for the same lands, forfeits both.
Depositions used before the Board of Property, no evidence on a trial between the same parties.
Though applications are to be liberally judged of, yet they shall give no title to lands in opposition to their terms, to the injury of others.

EJECTMENT for 330 acres of land in Mahoning township. The plaintiff's title was as follows :

Application in the name of John M'Cally for 300 acres, adjoining the path from Mahoning to Muncey creek, eastward of the said path, on the branches of Chillesquaqui, including a bog meadow, entered 3d April 1769, No. 712, indorsed " Richard Peters, jun. "

Survey thereon of 330 acres and allowance, by William Scull, deputy surveyor, on the 15th May 1771, which was brought into the surveyor general's office on the 3d July 1771, and Scull charged with 5s. 6d. thereon.

Receiver general's receipt for 36l. 1s. 6d. dated 14th November 1772.

A warrant of acceptance to receive the survey issued in favor of John Philips De Haas, sen. on the 17th November 1772, and on the 19th of the same month it was returned ; and it was agreed that the interest in this location was vested in the plaintiff's lessors.

The defendant claimed title under an application, in his own name, for 300 acres, on the head of the west branch of Chillesquaqui creek, and to extend to include the Beaver Dams on the said branch, entered 3d April 1769, No. 2076 ; and a survey thereon of 330 acres, by the said William Scull, on the 4th June 1769, which was brought into the surveyor general's office on the 7th December 1772.

A caveat was entered against the sealing of the patent to De Haas on the 10th December following ; the secretary and receiver general made their decision thereon in favor of the defendant, on the 5th June 1773.

On the 8th June 1773, the defendant paid 40*l.* 9*s.* 6*d.* to the re-
ceiver general, and the same day his patent issued.

When the decision on the *caveat* was offered in evidence, the same
was objected to by the plaintiff's counsel, who insisted that the secre-
tary and receiver being two only of three commissioners of property,
had no authority to determine thereon.

But the court resolved, that the evidence was properly offered. It
consisted with their own knowledge, that such had been the practice
of the land office in many instances, and their decisions had always
gone to the jury. Besides, when the governor signs the patent after-
wards, he thereby expresses his full concurrence therewith.

This decision specified, that it appeared, that De Haas had the prior
location, but there being another location put in at the same time, in
the same hand-writing, and for the identical piece of land, the secre-
tary and receiver general, according to a former determination of the
board, were of opinion that Galbreath's survey ought to be prefered
and accepted.

The other location referred to, was in the name of Archibald M'Elroy,
entered on the 3d April 1769, No. 919, and was read verbatim, with
that of M'Cally, indorsed " John Philip de Haas. "

The former determination referred to, was likewise shown in evidence,
and respected land, on Chillesquaqui. The Board of Property therein
decide on the 9th January 1771, that the owners of the locations, the
earlier in number, having put into the lottery three sets of locations for
the same places, and therefore had an unequal and unfair advantage
over the others, the five settlers, though later in their numbers, should
have the preference.

By the court. The grounds of decision on which the board proceed-
ed between these parties, were certainly just and conscientious, and
would be sanctioned by a court of justice. The late proprietaries hav-
ing intended to put the adventurers in the lottery on an equal footing,
the taking of a double chance for the same lands by any individual,
did not correspond with fair dealing. It may be resembled to a per-
son's putting in two votes at an election, whereby both tickets are thrown
away. But the secretary or receiver general's assertion on finding
of the fact, that De Haas put in two locations for these lands, does
not prove it, nor is the same conclusive on the jury. The original
applications ougth to have been produced under a subpœna, with a
*duces tecum*, and the jury could be enabled to judge for themselves by

inspection. It is true, that M'Cally's and M'Elroy's applications, containing the same precise words and orthography—the latter claimed by De Haas at the time of entry, and the former, at least as far back as the warrant of acceptance in 1772, give a strong ground for suspicion ; but much better proof could be had of the fact, if it really existed. The evidence at present, is merely of the presumptive kind, of which the jury will form their own opinions.

The deposition of John Neilly, who is since dead, taken on the 8th May 1773, and used before the Board of Property between these parties, was then offered in evidence by the defendent, but refused without argument by the court, who said, that such depositions had been uniformly rejected.

On the part of the defendant, it was proved, that the location under which he held was made by his father Bartram Galbreath, when he surveyed some adjoining lands under a special order for John Allen, esq. and that the same was descriptive of the lands in question, there being remarkable beaver dams thereon : and that on running the Indian path from Mahoning to Muncey, the chief part of the lands and meadow lay to the westward of the path, and that the bog meadow in the plaintiff's location, better suited one of the tracts east of the path, which had been surveyed for Mr. Allen.

The court informed the jury, that it had been often determined, that absolute strictness is not to be expected in the applications for lands in a country newly explored, and that if such lands are designated with a reasonable and convenient certainty, it is sufficient. Though locations however, are not to be scanned with critical exactness, but are to be judged of with some degree of liberality, yet it would be manifestly unjust, that a party should hold lands in direct opposition to the terms of expression of his wishes, to the injury of others. The plaintiff's application calls for lands adjoining the path ; but the survey is inclusive there of. It called for lands to the eastward of the path; but the great bulk of the survey, and the chief part of the meadow, lay to the westward thereof.

It was therefore submitted to the jury, whether the plaintiff's location was, under the terms thereof, intended for the lands in question ?

Verdict for the defendant.

Messrs. Ingersoll, Duncan and C. Smith, *pro quer*.
Messrs. D. Smith and Hall, *pro def*.