[Sunbury, June 15, 1829.]

BARTON and others *against* SMITH.

IN ERROR.

It *seems*, that the ninth section of the act of the 8th of *April*, 1785, requiring that surveys should be made after the warrants are delivered to the deputy surveyor, is not confined to the purchase made of the Indians in 1784.

Independently, however, of legislative enactment, a survey made previously to a warrant, is void; and is not rendered valid by the receipt of the purchase money and acceptance of the survey.

ERROR to the Common Pleas of *Huntingdon* county, in an ejectment brought in that court, by *Elizabeth Barton* and others, heirs of *William Barton*, against *Jacob Smith*, for a tract of land on the north branch of *Little Juniata*. *Jacob Smith* took defence for so much thereof as was included in a survey made for him on the 24th of *July*, 1807, under a warrant dated *February* 23d, 1807. The plaintiff's title was set up as follows: On the 1st of *February*, 1794, *William Barton*, Esq., their ancestor, took out a number

(Barton and others *v.* Smith.)

of descriptive warrants, all of that date. Surveys were returned, purporting to have been made on the 24th and 25th of *May*, in the same year, and were accepted in the surveyor general's office on the 29th of *April*, 1795. The purchase money was paid on the 14th of *June*, 1794; but evidence was given to show that the land was surveyed for Mr. *Barton* before the 19th of *April*, 1794.

The court charged the jury, that, if *Barton's* surveys were made before the warrants came to the hands of the deputy surveyor, the surveys were void, and that the acceptance of the returns of survey at the surveyor general's office was of no effect.

To this opinion the plaintiff's counsel took a bill of exceptions, and the jury having found a verdict for the defendant, a writ of error was taken out by the plaintiffs.

The cause was argued in this court on the 13th of *June*, 1828, by *Miles* and *Blanchard* for the plaintiffs in error, who contended that the surveys, though made before the warrants came to the hands of the deputy surveyor, were not absolutely void. The act *April* 8th, 1785, applies exclusively to the purchase made from the Indians in 1784. Several sections of the act have been expressly adjudged to be so applicable. *Lessee of Wright* v. *Wells*, 1 *Yeates*, 286. *Lessee of Hubley*, v. *White*, 2 *Yeates*, 146. *Lessee of Willinck* v. *Morris*, 3 *Yeates*, 114. *Woods* v. *Ingersoll*, 1 *Binn.* 146. *Lessee of M'Rhea* v. *Plummer*, 1 *Binn.* 227. *Lessee of Steinmetz* v. *Young*, 2 *Binn*, 520. *Lessee of Harris* v. *Monks*, 2 *Serg. & Rawle*, 560. *M'Dowell* v. *Ingersoll*, 5 *Serg. & Rawle*, 104. *Reynolds* v. *Dougherty*, 3 *Serg. & Rawle*, 325. *Creek* v. *Moon*, 7 *Serg. & Rawle*, 334. *Mock* v. *Astley*, 13 *Serg. & Rawle*, 382. But still, after a patent, the commonwealth, and all claiming under her, would be estopped. When the commonwealth has thus affirmed the transaction, the reason of the law ceases. The mischief was, that by sham surveys, subsequent *bona fide* appropriations were prevented. *Levinz* v. *Will*, 1 *Dall.* 434, gives the sound construction of statutes, which is exemplified in respect to deeds not recorded within six months. They are not void against a subsequent purchaser with notice, because the mischief intended to be remedied does not exist in such a case. The practice in the land office ought to have weight. Cotemporaneous construction of statutes should not be departed from. *Graham's Appeal*, 1 *Dall.* 136. *Stoolfoos* v. *Jenkins*, 8 *Serg. & Rawle*, 173. *Blythe* v. *Richards*, 10 *Serg. & Rawle*, 265. The acceptance of a survey legalizes it. It must be placed on the same footing as the acceptance of a shifted warrant or location. *Diggs* v. *Downing*, 4 *Serg. & Rawle*, 350. *Deal* v. *M'Cormick*, 3 *Serg. & Rawle*, 349, 350. *Smith* v. *Fultz*, 4 *Serg. & Rawle*, 473. *Healy* v. *Moul*, 5 *Serg. & Rawle*, 187. *Light* v. *Woodside*, 10 *Serg. & Rawle*, 24. *M'Dowell* v. *Young*, 12 *Serg. & Rawle*, 125. *Vickroy* v. *Skelley*, 14 *Serg.* 377.

*Potter*, for the defendant in error, was desired to confine himself to the question whether the act of *April* 8th, 1785, extends beyond

(Barton and others *v.* Smith.)

the lands purchased in 1784; and he argued, that as the preamble was general, and the mischief general, the remedy must be general. Even under the proprietary government, the warrant must have been in existence at the time of the survey. *Ross* v. *Evans*, 3 *Binn.* 50. *Wilson* v. *Stoner*, 9 *Serg. & Rawle*, 39, 42. *Mock* v. *Astley*, 13 *Serg. & Rawle*, 382, 385. A particular usage has been admitted, 2 *Smith, L.* 157, but the general rule was as stated. *ib.* 155, 6. In every case where a survey made without authority was afterwards validated by the proprietary officers, they knew of the departure from their orders. But whatever loose practice might have previously prevailed, it was put a stop to by the express regulations of the proprietaries in 1765. He also cited *Sproul* v. *The Lessee of Plumsted*, 4 *Binn.* 189. *The Lessee of Brown* v. *Long*, 1 *Yeates*, 162. *The Lessee of Bonnet* v. *Devebaugh*, 3 *Binn.* 175. *Add. Rep.* 127. *The Lessee of M'Kinzie*, v. *Crow*, 2 *Binn.* 105. *Stockman* v. *Blair*, 5 *Binn.* 211. *Simpson* v. *Hall*, 4 *Serg. & Rawle*, 343. *Bixler* v. *Baker*, 4 *Binn.* 214. *The Lessee of Harris* v. *Monks*, 2 *Serg. & Rawle*, 557. *Burd* v. *Seabold*, 6 *Serg. & Rawle*, 137.

The case was held under advisement until this day, when the opinion of the court was delivered by

ROGERS, J.—Two questions have been presented to the court, which have been argued with great zeal and earnestness: 1. Whether a survey, made before the warrant issues, be void; and, 2. Whether the payment of the purchase money to the commonwealth, where the warrant issued after the survey, the acceptance of the survey, and the order of the Board of Property of the 20th of *April*, 1795, validate the title of the plaintiffs. The plaintiffs claim the land by virtue of three warrants, bearing date respectively the 1st of *February*, 1794. The surveys, which purport to have been made the 24th and 25th of *May*, 1794, were returned, and accepted in the office of the surveyor general the 29th of *April*, 1795. The plaintiffs' ancestor, *William Barton*, paid the purchase money the 14th of *June*, 1794, and the surveying fees, as appears by a paper produced at the trial, the 19th of *April*, 1794. After the verdict, we are to consider it as settled, that the surveys were made before the warrants came to the hands of the deputy surveyor, to whom they were directed. It is contended, that a survey so made, is contrary to the plain provisions of the act of the 8th of *April*, 1785, and particularly to the ninth section; and, on the other hand, it is insisted, that the act does not apply to this land, but to the purchase of 1784; and, that the payment of the purchase money, and the acceptance of the survey, estop the commonwealth from denying the plaintiffs' title. There is, perhaps, no absolute necessity of deciding the much agitated question, whether the ninth section of the act of the 8th of *April*, 1785, be general, or confined to the purchase of 1784. Independently of the doubts expressed by some of our predecessors, for whose experience and judgment, in all things relating to titles

(Barton and others *v.* Smith.)

to real estate, I have the highest respect, I am inclined to believe, the legislature intended to establish a general system, operating alike upon all the lands belonging to the commonwealth. Some of the sections of the act, doubtless, have relation merely to the act of 1784; and to me it is equally plain, that others have a much more extensive operation, and this opinion is grounded on the preamble to the act, which is the key to its construction, the import of the sections themselves, the mischiefs which were felt, and were general, and not merely confined to lands within that purchase, and the remedy provided by the legislature. However that may be, yet it appears to me, that independently of legislative enactments, a survey, made previous to a warrant, is void, on general common law principles; because, made without any authority or direction from the government, in whom the power to grant is vested, to the deputy surveyor. The mischief which resulted from surveying lands, without authority, was felt at an early day; for it had the effect of retarding the settlement of the country, an object of primary importance, and defrauded the proprietaries, by preventing the sale of their lands. To remedy the evil, which in practice, prevailed to a considerable extent, as early as the 3d of *October*, 1765, the proprietary government made an order, by which they expressly prohibited the deputy surveyors from surveying any of the proprietaries' vacant, or unappropriated land whatever, on any ticket or order from any person but the surveyor general; nor were they to survey any land, unless they had a copy of a *regular warrant*, or application, numbered, and to them directed by the surveyor general himself, or by his order. The same policy, and for the same reasons, has been pursued under the commonwealth, as appears from the act of the 8th of *April*, 1785, and of the 3d of *April*, 1792. A survey, therefore, after this proprietary order, and in contradiction of the policy of the acts of assembly, without warrant, could produce no benefit to him who acted knowingly against law. Whether under the proprietary government, a survey, although made without authority, returned to the office, accepted, and money paid, with a full knowledge of all the circumstances by the proprietary agents, would give title, may be an inquiry of more curiosity than use, as since the divesting act of the 27th of *November*, 1779, a different state of things has existed. As the proprietaries were the absolute owners of the soil, with power to dispose of the lands in such manner, and upon such terms as they might deem most advantageous to themselves and the public, a subsequent ratification by them, with full knowledge of the facts, would, upon the ordinary principles of principal and agent, cure any irregularity in the sale. The proprietary servants had not merely a limited, but a general authority, which was a power necessary for the correct and proper discharge of their trust; and hence, I believe, there is no instance of their refusing to ratify the acts of their agents, who were in the habit of dispensing with the general rules of the office, where no

(Barton and others *v.* Smith.)

injustice had been done, or fraud intended.   Hence, there was an implied understanding, that in the purchase of lands from the agents, the vendees were dealing with the principals, and upon the same terms as if they were personally present.   To say, therefore, that the title was not valid, where the survey had been accepted, and money paid, with a full knowledge of all the circumstances, and without any intervening right, would have been a fraud upon the purchasers.   But since the revolution, and the subsequent appropriation to the use of the commonwealth of the proprietary vacant land, circumstances have entirely changed.   The officers of the land office, under the state government, are as much bound by the acts of assembly, as any other citizens.   They derive their authority from the law, which they may construe, but cannot alter.   A uniform practice of the land office is a strong evidence of the law, to which the courts have always paid great respect, particularly where a difference in construction, where there is room for it, would unsettle estates; but that they can disregard the plain injunction of an act of assembly, is what cannot be permitted.   It is contrary to the theory of our government, that they should have a dispensing power, and in this consists the difference in the usages of the present, and the proprietary government.   The court are, therefore, of the opinion, that the survey being made without authority, is void; and, that the receipt of the purchase money, and the acceptance of the survey, do not render valid the title of the plaintiffs.   If Mr. *Barton* and the officers of the land office acted under a mistake, it is a strong case for relief, by an application to the legislature, who alone can refund the money, or cure the defect of title.   The legislature alone, stand in the place of the proprietaries, with full power to relieve the plaintiffs, if they have sustained injury.

Judgment affirmed.