## The Manhattan Coal Co. *versus* Green.

1. A younger block of surveys called for older blocks on the north and on
the south ; there not being sufficient vacancy to answer the calls of all, the
younger must give way.

2. No mistake in the calls of the younger survey could affect the location
of the older ; it could not be changed by the calls of the younger.

3. To locate the younger the proper way was to run out the older blocks ;
the first surveys of the younger would be entitled to the vacant land.

4. Precisely descriptive warrants are those which so clearly describe the
land that it can be readily identified and the warrant applied ; they take title
from their date.

5. A vaguely or loosely descriptive warrant ascertains only propinquity,
and the land must be surveyed in order to identify it and render it certain ;
it takes title from the survey.

6. A warrant to Myer was "400 acres on a branch of Big Schuylkill
called 'Big Run,' adjoining lands surveyed on a warrant to John Hartman,
down the said creek one mile,  near the Tory path, Berks county."    There
was no survey for John Hartman earlier than the warrant ; but one later.
*Held,* that the Myer warrant took title only from the survey.

7. A survey without a warrant is void, excepting surveys allowed to actual
settlers under Act of April 3d 1792.

8. Hubley *v.* Van Horne, 7 S. & R. 185 ; Norris *v.* Monen, 3 Watts 469 ;
Patterson *v.* Ross, 10 Harris 340, followed.

March 6th 1873.    Before READ, C. J., AGNEW, SHARSWOOD,
and MERCUR, JJ.    WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county :*
No. 167, to January Term 1870.

This was an action of ejectment brought April 3d 1856, by

[Manhattan Coal Co. *v.* Green.]

John Green against Thomas J. Atwood, for a tract of land in Foster township, containing 350 acres of land or thereabouts, and bounded by lands surveyed on warrants granted to John Hartman, John Kunkle, Christina Levenburg and others. The Manhattan Coal Company were on the 3d of November 1869, substituted as defendants.

The plaintiff claimed under a warrant of February 27th 1793, to Philip Myer, for 400 acres surveyed May 19th 1794; the land as described in the writ was claimed by defendants as part of four warrants of November 18th 1793, in the name of John Shomo, Anna Maria Shomo, Henry Thiell and Susanna Sillyman, surveyed in January and February 1794.

The case was tried November 3d 1869, before Ryon, P. J.

The plaintiff's title was as follows :—

Application February 27th 1793 : "Philip Myer for 400 acres of land on a branch of Big Schuylkill, called 'Big run,' adjoining lands surveyed on a warrant granted to John Hartman, down said creek one mile, near the Tory path."

Warrant February 27th 1793, to Philip Myer (same description), in the county of Berks.

Survey May 19th 1794, by Henry Vanderslice, deputy-surveyor, situated on the branches of Big Schuylkill, in Berks county, containing 400 acres, 145 perches and allowance.

In the draft a stream; calls to adjoin on the north John Kunkle; on the east Christina Levenburg—one part west marked vacant, and on south and south-west no call. Return of Philip Myer on 3d September 1794. Patent 31st December 1838, of same tract to William C. Levensworth.

By various conveyances, fifteen-sixteenths of the Philip Myer survey were vested in the plaintiff before the commencement of the suit; the remaining sixteenth was acquired by him May 8th 1865.

The Philip Myer survey was one of a block of thirteen surveys, warranted February 27th 1793 and February 18th 1794, and surveyed from May 19th to May 27th 1794; the batch was not marked on the ground; this block included surveys in the names of Killian May, Mary and John Kunkle, Robert Kinnear, Christina Levenburg, &c.

The calls on the northern side of the block of thirteen are for surveys in another block having the original marks; the surveys in this block were made in 1787, 1788, 1790, 1792, in the names of Zerbe, Yarnall, Kunkle and others.

On the south of the thirteen is a block of sixteen surveys warranted November 18th 1793; two of them in the name of Susanna Sillyman and Henry Theill respectively, surveyed by William Wheeler, deputy-surveyor, January 22d 1794. The remaining fourteen warrants were surveyed from 11th to 18th of February

1794, by Henry Vanderslice, deputy-surveyor; amongst these were surveys in the name of John Shomo, Ann Maria Shomo, George Groh, Jr., &c.

There were no marks on the ground on the *northern* side of *this* block, but upon the south side and on some of the intermediate surveys there were marks by which, and by the calls, the whole block including the lines of the northern surveys can be located.

On the 5th of August 1793, a warrant was issued to John Hartman, for 316 acres on Broad mountain, including several springs and a run emptying itself into the west branch of Schuylkill, in Brunswick township, Berks county, and surveyed 21st August 1793, by William Wheeler, deputy-surveyor, "for land in Brunswick township, Berks county, 317 acres." Calls for vacant land all around.

No warrants or survey in the name of John Hartman earlier than the above could be found.

The defendants owned the whole of the block of the sixteen surveys.   In locating this block there was not room between its northern line and the southern line of the northern block for the block of thirteen.

According to the plaintiff's theory, the deputy-surveyor made a mistake in the call on the southern side of the block of the thirteen surveys, and that therefore by protracting those surveys from the distinctly-marked surveys of the northern block, the location of the Philip Myer would be on the Sillyman, Thiell and Shomo surveys in the defendant's block of sixteen; and where plaintiff claimed it to be.

The evidence in the case was very voluminous, very much of it was as to where the " Big run" and " Tory path" were; a great deal also bore upon the location of the surveys in the block of the sixteen and that of the thirteen surveys.

There was much evidence on questions not considered in the opinion of the Supreme Court.   Also, bills of exception on questions of evidence.

What has been given, with the answers of the court below to the points of the parties, and the opinion of the Supreme Court, will sufficiently exhibit the case.   The plaintiff's 1st and 4th points, with their answers, are as follows :—

1. " The warrant to Philip Myer being reasonably descriptive on its face, if it was surveyed on the land described in the warrant on the 19th May 1794, and returned into the land office on 3d September 1794, the title refers back to the date of the warrant, and no person had authority to interfere with the land described in the warrant after its date.   The title being fixed in the owner of the warrant at its date, and followed by a survey returned within a reasonable time, any survey made for other parties after its date, on the same land, is merely void as against the owner of the

[Manhattan Coal Co. *v.* Green.]

prior warrant, and cannot affect him without his consent, and the plaintiff has a right to recover."

Answer : " The first point affirmed, with the remark that whether there was a ' Big run,' a branch of the Big Schuylkill, in 1794, and a ' Tory path,' and whether there was at that time (27th February 1794) a survey made upon the ground, in the name of John Hartman, and this fact was known to Philip Myer, and whether the Philip Myer was located and surveyed upon the land described in the warrant, are questions of fact for the jury."

4. " If the jury believe that the Philip Myer warrant was located by the lines of older surveys marked upon the ground, as testified to by Lewis and Rockafellow, it must remain where it was put, and cannot be shifted or changed from its location by arbitrary or inconsistent calls in the return of survey."

"This point affirmed."

The following are points of defendants, with their answers :—

1. " The call in the Philip Myer warrant for ' land surveyed on a warrant granted to John Hartman,' cannot be filled by the survey of August 21st 1793, to John Hartman, under a warrant, of August 5th 1793, later than the date of the Myer warrant."

Answer : " The call in the Philip Myer warrant for the survey in the name of John Hartman, was a call for a survey whose lines were actually run and marked upon the ground at that date (27th February 1793). If there was no such survey then marked upon the ground, the call for the John Hartman is not a valid call, and the warrant to Philip Myer not such a descriptive warrant as to make title from the date of the warrants. If the John Hartman tract was surveyed and marked upon the ground on or before the 27th February 1793, although the survey by the deputy-surveyor purports to have been made on the 21st August 1793, and Philip Myer knew the fact that the John Hartman was then (27th February 1793) actually surveyed and marked upon the ground, the call in Philip Myer warrant for the John Hartman was a valid call.

" The presumption is, that the survey for the John Hartman was made on the 21st August 1793, as returned by the deputy-surveyor ; but if there are marks on the ground which satisfy you that the survey was made prior to that date, and old enough to answer as a call for warrant of 27th February 1793, it would be a valid call. The question is one of fact for you. If the Hartman is not a valid call, the defendants are entitled to recover.

7. " In order to make title under a descriptive warrant, it is necessary that a survey upon it should be made upon the ground, within a reasonable time ; and as the Philip Myer survey was never made upon the ground, but is chamber work, the title of the plaintiff under the Myer warrant to the land claimed in this suit is void as against that of the defendants, under the Shomos, Thiell, Silly-

[Manhattan Coal Co. *v.* Green.]

man and Groh surveys, and their verdict must be for the defendants."

Answer: "This point calls upon us to pronounce the title of the Philip Myer void as against the title of the defendants. If the Philip Myer has no marks upon the ground from which its location and position can be determined, then we affirm this point; but in determining this, you must take all the evidence which relates to this survey. It is admitted that the Philip Myer is one of a block of thirteen surveys which were located from calls to adjoin older blocks of survey on the south, and a series of older surveys on the north and east, well marked upon the ground. The Philip Myer (in question) is one of the leading surveys of this block of thirteen, *perhaps the leading survey.* If there is a leading warrant, you begin to locate this block by locating the leading warrant and the survey upon it, fixing that by its boundaries; the rest would be located by the first in consecutive order, the second bounding on the first, with its proper courses and distances, unless excluded by an actual line on the ground made for that tract, or adopted for it by the deputy-surveyor as the line of an older survey *actually located* upon the ground, and so on until the whole block is located.

"Now the block of which the land in question is one, calls for the old Yarnells and Kunkels on the north and east, and for the block of which the Shomo (defendants' land) is one, on the south. If these calls of the younger block for the older are not a mistake, the younger block must be located with reference to them; or, if it cannot be located so as to answer all, then to answer as many as possible of the calls, and ignore as few as possible. If this younger block is located in this way, though it may be chamber work, it is not such a chamber survey as is made void as against younger surveys upon the same land, surveyed and returned within twenty-one years from the date of the first survey, for the reason that a call for an older survey by the younger is a call for the lines of the older survey to be a line for the younger, and it is not necessary for the surveyor to re-mark the lines; the lines of the older become the line of the younger upon the side to which the younger is called to adjoin. Now, upon this rule, to locate this block of thirteen surveys, the calls for older surveys, upon any part of the block, is a call for each tract, so far as it may go to locate the tract, and to give it the character of a good survey; and hence, as the block of thirteen surveys, of which the Philip Myer is one, calls to adjoin older surveys on the south, east and north, all the tracts of that block may be located by older surveys, and the survey is good, although the surveys may have been made by protraction, and not by actual marks made for these individual tracts."

8. "As the south line of the block of thirteen tracts, of which the Philip Myer is one, calls for, and adopts precisely, the northern line of the block of fourteen owned by the defendants, and as no

lines of the junior block are found upon the ground to carry it beyond its calls, there can be no interference between the two blocks, and their verdict must be for the defendants."

Answer: "This affirmed, unless you should find this call upon the south *was a mistake.* The old surveys on the north were well marked upon the ground. The location of this tract of thirteen began with the Philip Myer, and then John Kunkel, or *vice versa,* and then Mary Kunkel and Killian May. Philip Myer and John Kunkel are returned as surveyed on the 19th May 1794. The Mary Kunkel, Killian May and Robert Kinnear were returned as surveyed on 20th May 1794. The Philip Myer does not call for the Shomo upon the south, but vacant on the south and west. The Myer calls for Christina Levenburg on the east. Christina Levenburg was returned as located on the 22d of May 1794, three days after the survey of Philip Myer. Yet the Levenburg calls for Myer, and the Myer for Levenburg, and the Levenburg calls for John Shomo on the south, and so with the southern tier of batch of thirteen, except the Philip Myer calls to adjoin the north line of the defendants' batch of fourteen tracts. But the line between these blocks was not marked upon the ground, or no marks are now to be found. These blocks were located by Vanderslice, and if there was no enclosing line on the north of the batch of the fourteen surveys marked upon the ground, then this line is to be ascertained by surveying and locating the blocks and drawing the line from the north-east to the north-west corners. This is the line then called for. But did Vanderslice know where this line would come? If he did, he made a mistake somewhere else, for the distance between the older surveys on the north and west, and the block of fourteen on the south of the batch of thirteen, is not large enough to put the thirteen surveys in, and the question for you to find is, which are the reliable calls and which are the mistaken calls, and locate this batch according to the valid calls, as explained before.

"Another point is the calls of the Philip Myer and others of the batch as to the waters and other natural monuments. The Myer calls to be on a branch of the Schuylkill. If it is thrown over to adjoin the Shomo, it would extend over the mountain upon Deep creek, which empties into the Susquehanna. The return of the deputy-surveyor does not always have the water correctly laid down, even when the survey was made upon the ground; but when the survey was made by protraction, the waters are not so reliable a guide as to the correct location of the waters laid down upon plot, as returned into the land office by the deputy-surveyor. But the survey calls for the Schuylkill; and as that is a natural monument, it is to be taken into consideration in ascertaining the true locality of the survey."

11. "The proper way to locate the block of thirteen tracts, of

[Manhattan Coal Co. *v.* Green.]

which the Philip Myer is one, is first to run out the lines of the two older blocks, for which it calls, and, if there is not sufficient vacancy to contain the thirteen tracts, those of the thirteen first surveyed will be entitled to the vacant land, to the exclusion of the later ones ; but, in no event, can any of the younger block exclude any of either of the older blocks; and therefore, the verdict of the jury must be for the defendants."

Answer : " The law is properly stated in this point, and we affirm it ; but decline to direct the verdict in favor of the defendants."

The verdict was for the plaintiff for fifteen-sixteenths of the land described in the writ.

The defendants took out a writ of error and assigned for error, amongst others, the answers to the foregoing points.

*F. B. Gowen* (with whom was *G. DeB. Keim*), for plaintiffs in error.—As to the 8th and 11th points. The location of the block of the thirteen surveys was the younger, and must be controlled by the block of sixteen the older, and no mistake in the younger could change it; Hagerty *v.* Mathers, 7 Casey 357, s. c. 1 Wright 66.   The question is as to the location of the older survey : Bellas *v.* Cleaver, 4 Wright 267 ; Carbon Iron Co. *v.* Rockafeller, 1 Casey 55 ; Boynton *v.* Urian, 5 P. F. Smith 142.   Junior surveys cannot be extended against the intention of their surveyor : Malone *v.* Sallada, 12 Wright 419 ; Robeson *v.* Gibbons, 2 Rawle 48.   If the surveyor makes an older survey a call for a younger, he asserts that there is no interference : Harper *v.* Mechanics' Bank, 7 W. & S. 211; Porter *v.* Ferguson, 3 Yeates 60.   The location is to be made where there are several warrants from the one which has known boundaries : Fox *v.* Lyon, 9 Casey 479 ; Gratz *v.* Hoover, 4 Harris 239.

As to the 7th point, they cited Fugate *v.* Cox, 4 S. & R. 293 ; Morris *v.* Travis, 7 Id. 22 ; Sergeant's Land Law 117 and cases cited.   An actual survey is necessary on a descriptive warrant to give title from its date: Hunter *v.* Meason, 4 Yeates 108.   The survey must be made with due diligence : Lauman *v.* Thomas, 4 Binn. 58 ; Lilly *v.* Paschal, 2 S. & R. 396 ; Starr *v.* Bradford, 2 Penna. R. 384 ; Strauch *v.* Shoemaker, 1 W. & S. 173 ; Chambers *v.* Mifflin, 1 Penna. R. 74 ; Addleman *v.* Masterson, Id. 454 ; Emery *v.* Spencer, 11 Harris 271 ; McGowan *v.* Ahl, 3 P. F. Smith 89 ; Kirkpatrick *v.* Vanhorn, 8 Casey 137.   As to whether the call in the Myer warrant of February 1793 for the John Hartman warrant can be filled by a warrant of August 1793.   The efficacy of a warrant must depend on its words: Galbraith *v.* Mauss, 2 Yeates 244 ; De Haas *v.* De Haas, Id. 317 ; Ormsby *v.* Ihmsen, 10 Casey 473; Carmalt *v.* Post, 8 Watts 411.   After twenty-one years the return of is conclusively presumed to be regular: Nieman *v.* Ward, 1 W. & S. 79 ; Mock *v.* Astley, 13 S. &

[Manhattan Coal Co. v. Green.]

R. 382; Caul v. Spring, 2 Watts 390 ; Lamborn v. Hartsvich, 13 S. & R. 113 ; Bellas v. Levan, 4 Watts 300 ; Schable v. Doughty, 3 Barr 395.

*F. W. Hughes* (with whom was *T. B. Bannan*), for defendant in error.—When the lines are not run and marked on the ground and there are no other circumstances equally decisive, calls for adjoiners and other fixed boundaries govern the calls for courses and distances when there is a discrepancy between them, for the reason that it is easier to be mistaken in a measurement, than it is in a boundary: Brolasky v. McClain, 11 P. F. Smith 163; Mackentile v. Savoy, 17 S. & R. 104 ; Murphy v. Campbell, 4 Barr 485 ; Cox v. Couch, 8 Id. 147 ; Petts v. Gaw, 3 Harris 218; Mathers v. Hegarty, 1 Wright 64 ; Speakman v. Forepaugh, 8 Id. 372.   The lines actually marked on the ground constitute the survey and control the distances, even where the draft of the survey calls for natural or other fixed boundaries: Mageehan v. Adams, 2 Binn. 109 ; Walker v. Smith, 2 Barr 43; Thomas v. Mowrer, 3 Harris 139 ; Younkin v. Cowan, 10 Casey 200 ; Quinn v. Heart, 7 Wright 341.

The lines of older surveys marked upon the ground and adopted by the surveyor are of the same validity as the lines of the younger survey and become its lines: Eister v. Paul, 4 P. F. Smith 198 ; Parshall v. Jones, 5 Id. 153.

They may be adopted and returned for the new survey with the same effect as if the survey had traced them on the ground; McRhea v. Plummer, 1 Binn. 227; Caul v. Spring, 2 Watts 390 ; Dreer v. Carskadden, 12 Wright 38.

The opinion of the court was delivered, May 17th 1873, by

AGNEW, J.—John Green, the plaintiff below claimed title under a warrant in the name of Philip Myer, one of a block of thirteen surveys made by Henry Vanderslice, deputy-surveyor, on the 18th to the 25th of May 1794.   The Myer survey as claimed to be located, embraces parts of two surveys claimed by the defendants contained in a block of fourteen surveys made by Henry Vanderslice, deputy-surveyor, on the 11th to the 18th of February 1794 ; and also parts of two surveys claimed by the defendants, made by William Wheeler, deputy-surveyor, on the 22d of January 1794. Neither the Myer survey, nor the four surveys claimed by the defendants, can be located by marks on the ground, applicable to them individually, but in each case the location is ascertained by the places they occupy in their respective blocks.   The block surveys, however, are readily ascertained and identified by original marks, and older surveys found on the ground on the north side of the block of thirteen surveys, and on the south side of the block of fourteen surveys.   As thus ascertained there is not room between the older surveys for the whole number of surveys in each

block. In this state of the case that portion of the block of thirteen surveys, on its south side, which interferes with the northern portion of the block of fourteen surveys, must give way, the thirteen being younger in date than the fourteen. The instruction of the judge on this part of the case, given in answer to the 8th, 9th and 11th points of the defendants, was correct, except in the qualification of the answer to the 8th point, as to the supposed mistake in the call upon the south side of the block of thirteen surveys. The qualification was in effect contradictory; for the block of thirteen surveys being younger than the block of fourteen surveys, no mistake in the call of the former could affect the location of the latter. An older survey cannot be changed or contradicted by the lines of a junior survey. The calls of the latter, whether mistaken or true, do not limit the lines of the former: Carbon Run Improvement Company *v.* Rockafeller, 1 Casey 49; Bellas *v.* Cleaver, 4 Wright 260. In affirming the defendants' 11th point the court correctly informed the jury, that the proper way to locate the block of thirteen was first to run out the older blocks for which it called, and if there was not a sufficient vacancy left to contain the whole thirteen, those of the thirteen first surveyed would be entitled to the vacant land, but in no event could any of the younger block exclude any of the older block. The fact that the Philip Myer survey called for vacant land on the south and west, or that the call of the block of thirteen for the surveys in the block of fourteen was owing to a mistake in some way by Vanderslice, the deputy-surveyor, could not affect the older block of fourteen, or carry the Myer survey within its lines.

The call of Philip Myer for vacant land south and west makes it probable the surveyor thought it extended westward past the block of fourteen, as shown in a connected draft of three blocks (these two and the block on the north of both), but this would not justify an interference with the older surveys. The defendants were therefore entitled to an unqualified instruction that the block of fourteen surveys being previously located, none of the surveys in the younger block of thirteen could interfere with any of the former, and no mistake of the surveyor in locating, or in the calls of the thirteen, could affect the surveys in the block of fourteen.

In this attitude of the case the plaintiff was driven to another position. He claimed that the warrant of Philip Myer was precisely descriptive of the land in controversy, and on this ground, if found in its proper location, it ante-dated the defendants' title, even though the location fell within the block of fourteen. This raises the question as to the description in the Myers warrant. Descriptive warrants are of two kinds, those which are precisely descriptive, and those which are only vaguely or loosely descriptive. The former are such as so clearly describe the land that it can be readily identified and the warrant applied. These take

title from their date, the subject of the purchase being defined with sufficient certainty at the time of the application.. On the other hand, a vague or loose description only ascertains propinquity, and the land must still be defined by a survey in order to identify the subject of the purchase, and render it certain. In the latter case the title takes date only from the time of survey: Hubley *v.* Van Horne, 7 S. & R. 185; Norris *v.* Monen, 3 Watts 469; Patterson *v.* Ross, 10 Harris 340. In Patterson *v.* Ross, the warrant was for four hundred acres of land north and west of the rivers Ohio and Allegheny and Conewango creek, on the west bank of Big Beaver creek, and to include the walnut bottom lying on the run that falls into said creek nearly opposite an island between the big and little falls, by estimation one mile above the block-house. The evidence on the ground readily identified the big and little falls, the island, the site of the blockhouse, and the run falling into the creek on the west side nearly opposite the island; but the identity of the walnut bottom lying on the run was not clearly ascertained, the bottom along the run being large enough to admit of several tracts of 400 acres. It was held that the warrant was not precisely descriptive, and the title took date only from the time of the survey. In regard to that particular description I think the idea of vagueness was carried to an extreme, and that probably that part of the description which required the tract to be on the west bank of the creek was not given its full force. But this does not change the principle on which the case was decided, that a vague or loose description gives title only from the survey, nor does it lessen the force of the illustration the case affords, in determining what is a vague description.

The description contained in the Philip Myer warrant, is as follows: "400 acres of land on a branch of Big Schuylkill, called 'Big Run,' adjoining lands surveyed on a warrant granted to John Hartman, down the said creek, one mile, near the Tory path, in Berks county."

Excepting so much of this description as locates the tract "adjoining lands surveyed on a warrant granted to John Hartman," the entire description is very loose and vague. No land is precisely ascertained by its being on Big Run. It is not said on what side of the run it lies, or whether across it. Nor is it said how near or on what side of the Tory path it lies. "Down the creek one mile," must mean, if it means anything, one mile down the creek from the survey of John Hartman; otherwise, the fact of adjoining that survey would be in itself a vague description, for it is not said on what side of the Hartman survey the Myer land is to lie. The Hartman survey is therefore the key to the description. In Fox *v.* Lyon, 9 Casey 479, it was held that a warrant to John Fox, for land adjoining a survey in the

name of Mordecai Massey, on the north, and land of Fowler &
Co., surveyed to adjoin Mordecai Massey on the north, but lying
150 perches from the Fowler & Co. lands, was a shifted location.
So in De Haas *v.* De Haas, 2 Yeates 317, a survey including a
path, and a chief part of the land lying *westward* of it, was
viewed as deviating from the call in the warrant, which was for
land adjoining the path from Mahoning to Muncy creek, *eastward*
of the said path, &c." It is evident, therefore, that the descrip-
tion in the Myer warrant depends for its precision wholly on that
which calls for its " adjoining lands surveyed on a warrant granted
to John Hartman."

Without that, " down the creek one mile" is meaningless, and
the Big Run and the Tory path afford no evidence of precise
locality. It will be noticed that the call is not for a *survey* merely,
which might send the inquirer in the land office, to the ground, to
search for such a monument ; but it is for land surveyed on a
*warrant* granted to John Hartman. This description sends the
inquirer directly to the files of the land office, and they discover no
trace of such a warrant and survey existing at the date of the
Philip Myer warrant on the 27th of February 1793. The only
warrant to be found in the office, according to the evidence, in the
name of John Hartman, bears date afterwards on the 3d of August
1793, and the survey under it was made on the 21st of August
1793. It is very clear, therefore, that this portion of the descrip-
tion in the Myer warrant was notice of nothing, to those who desired
to take up lands in this vicinity, and was void for uncertainty.
When an applicant for land is informed of an office right and sur-
vey under it, he has the means at once, by resorting to the files
of the office, of ascertaining its location, and thus of avoiding an
interference with it, in making his own survey. This is all impor-
tant to him, for the state does not guaranty against loss, where a
junior warrant-holder surveys in land appropriated to an older
warrant. Hence, when no search he can make will lead to infor-
mation, it is clear he cannot have legal notice of the former appro-
priation, by such a false description. In such a case he must suffer,
who, by his false description, leads away from notice. Nor is the
fact that a survey is mentioned to be disconnected from the state-
ment that it was made on a warrant. A survey without warrant
is void, since the proprietary government and customs have ceased
to exist, excepting surveys allowed to actual settlers under the Act
of 3d April 1792. Under the Penns surveys were sometimes made
without a precept, and the custom to receive them has been per-
mitted to be proved : Woods *v.* Galbreath, 2 Yeates 306. But
since the divesting Act of 27th November 1779, the practice has
not been allowed : Barton *v.* Smith, 1 Rawle 403.

The importance of notice of pre-existing rights to those who take
up lands from the Commonwealth, cannot be overrated, and is

strongly set forth by Judge Rogers, in Roland *v.* Long, 1 Harris 464, and by Judge Woodward, in Emery *v.* Spencer, 11 Harris 271. Judge Rogers said, that an applicant is not bound to look beyond the land-office, and although a warrant may be issued and survey paid, yet if there be no return of survey in the office, the title under the junior warrant will be good. This is not to be taken in an unqualified sense, yet it is evidence of the importance attached to the records of the land-office. Any one, therefore, reading the description in the Philip Myer warrant, and then finding in the land-office no such warrant as that of John Hartman referred to in it, would not be bound to look further; for there is no other place than the land-office where such warrants are legally to be found. And knowing that a survey without a warrant is void he would not be led to believe that such a survey could be meant, when the description asserts that it was made on a warrant. The result is, that the description in the Philip Myer warrant, that the tract adjoined lands surveyed on a warrant, to John Hartman, is nugatory, and gives the warrant no precedence over junior claimants, and the remainder of the description being vague and uncertain, the title under the warrant takes date from the time of survey. This disposes of the case, and renders it unnecessary to pass upon the other assignments of error. The question becomes one of location merely; and if, as the evidence appears to show, the block surveys are identified by marks on the ground clearly indicating their location, the block of thirteen, being younger than the block of fourteen, must give way to the latter, and the Philip Myer warrant, not being precisely descriptive, must give way so far as it interferes with any of the surveys of the block of fourteen.

Judgment reversed, and a *venire facias de novo* awarded.