## GORDON *against* the Lessee of MOORE.

### IN ERROR.

1812.

Sunbury,
Tuesday,
June 9.

Before a settler ascertains his boundaries by warrant and survey, he may, so far as concerns his neighbours, ascertain his limits by lines marked on the ground. These lines are notice to the neighbourhood, and unless some particular objection should occur to them, must be adhered to, when the title comes to be completed by warrant, survey, and patent. It is therefore competent for one of two interfering settlers, to give evidence, that before the other had taken out a warrant, the former had declared his intention to extend his claim in a certain direction by a marked line, of which the other had notice.

THIS case came before the court upon a bill of exceptions to the Common Pleas of *Centre* county, who rejected evidence offered by the defendant below, under these circumstances:

*John Moore*, the lessor of the plaintiff, and *Gordon* the defendant, had each commenced an improvement, and each by taking 300 acres, including his improvement, might embrace the land in dispute. *Moore*, who was an unmarried man, built a small house in the autumn of 1803. In the spring of 1804 he brought his father and his family to the land, and built another house in which they resided. *Moore* was a wood cutter at a neighbouring iron works, but his home was the house in which his father's family lived. In *March* 1805, he took out a warrant, by virtue of which a survey was made on the third of *July* 1805, of 255 acres, 139 perches, including his improvement and also the land in dispute.

*Gordon* gave evidence of his own improvement, and then offered to prove, that in the autumn of 1804, he and *James Moore*, the father of *John*, agreed to a division line and marked it on the ground; but the Court rejected the evidence, upon the ground, that *James Moore* had no power to fix the boundaries of his son's land.

*Huston* argued for the plaintiff in error.

*Burnside contra.*

TILGHMAN C. J. This case comes before us on a bill of exceptions, and turns on the admissibility of the parol evidence of a division line made between *Gordon* the defendant below and *James Moore* father of the plaintiff, which was offered on the part of the defendant and rejected by the court. In order to determine this, we must take a view of the preceding evidence, which was to the following effect. [The Chief Justice here stated the facts.]

1812.

GORDON
v
Lessee of
MOORE.

We must take into consideration the peculiar nature of this title acquired by improvement and settlement. A settlement having been commenced, the settler gained a right of pre-emption of 300 acres of land, provided there was so much vacant and unappropriated adjoining his improvement. But as *John Moore* and *Gordon* had an equal right to 300 acres, it might become necessary that each should abate something of that quantity. It is understood to be the law, that before a settler ascertains his boundaries by warrant and survey, he may, so far as concerns his neighbours, ascertain his limits by lines marked on the ground. Before this is done, it is impossible to say what land is intended to be included in the settlement. For it may be laid off in various directions, and less than 300 acres may be taken at the pleasure of the settler. The lines being marked, notice is given to the neighbourhood; and unless some particular objection should occur, it is reasonable that those lines should be adhered to, when the title comes to be completed by warrant, survey and patent. Now granting that *James Moore*, the father of *John*, had himself no right of pre-emption, and that he could do no act to fix the boundaries of his son, without authority derived from him, it was material for *Gordon* to prove, that previous to *John Moore's* taking out a warrant, he *Gordon* had declared his intention to extend his claim, as far as the line agreed on with *James Moore;* and as *John Moore* was generally absent and employed in wood-cutting, and his father was always on the land, it was very proper that the father should receive notice of the extent of *Gordon's* claim. *Gordon's* improvement was to the eastward of *Moore's*. He might for aught that appears, have taken up what land he wanted by going to the eastward of his improvement, without touching the land now in dispute. It was his duty therefore, if he meant to go to the westward, which would bring him in contact with *John Moore*, to give early notice of his intention, in order that *Moore* might govern himself accordingly. In this point of view, I am clearly of opinion, that the evidence offered by *Gordon* was competent, and ought to have been received. At the same time, the Court should have informed the jury, that the act of *James Moore* had no effect on his son's title, unless autho-

1812.

GORDON
v.
Lessee of
MOORE.

rised by him. My opinion is, that the judgment should be reversed, and a *venire facias de novo* be awarded.

YEATES J. Whether the consentible line established between *James Moore* and *Robert Gordon*, which was offered to be proved on the trial, was binding on *John Moore* under the circumstances of the case, would depend on the fact of ownership of the improvement under which the claim was set up by the plaintiff below. But that the same was admissable evidence to designate the claim of the plaintiff in error under his improvement, previous to the warrant taken out by the adverse party, there can be no doubt whatever. The plaintiff below might have demanded of defendant's counsel for what purpose this evidence was offered. But not having done so, if the fact attempted to be established was properly receivable for any purpose, it is manifest error if the evidence was rejected.

I am of opinion, that the judgment of the Court of Common Pleas be reversed, and a *venire facias de novo* be awarded.

BRACKENRIDGE J. was sick during the argument and gave no opinion.

Judgment reversed and *venire de novo.*