Tilghman C. J.
The first error assigned in this cause, is upon a bill of exceptions to the testimony of John Hayes. The objection is, that since the act of 22d September, 1794, (3 Sm. Laws, 193.) an improvement right is to be considered as real estate, and, therefore, subject to the provisions of the act for the prevention of frauds and perjuries; which enacts that no estate in lands, shall pass without a conveyance in writing. But, supposing the act against frauds and perjuries to be applicable to an improvement right, I do not see why the evidence offered, in this case, should not have been admitted: because the parol sale, by Bailey, was accompanied with delivery of possession and payment of the purchase irioney: circumstances which have been frequently determined to take a case out of the act. It was objected, also, that the testimony of Bailey, himself, upon oath, ought to have been produced. But, considering that he had left the state 17 or 18 years before the trial, and there was no evidence of his having been heard of, I think it might reasonably be presumed that he was dead: and then, in case of a parol sale, there could be no better evidence than the declarations of the vendor, accompanied with constant possession by the vendee, and those claiming under him.
Two other exceptions were taken to the charge of the *410 President of the Court of Common Pleas. Jonathan Bailey had seated himself on vacant land. The whole vacancy was about 16.0 acres. After Bailey came the defendant, who built a house on another part of the vacant land. The J udge told the jury, that if the defendant came on the land without the consent of Bailey, he was a trespasser. In considering the charge of a Judge, this Courtis to take the whole together, and give it a candid and liberal construction. It would be unfair to select particular expressions, and lay stress upon them, without regard to other parts, which might explain them. Taking this whole charge into view, I think the law was laid down accurately as to the defendant’s being a trespasser: that is to say, if Bailey made a settlement with an intent to take up the whole vacancy of 160 acres, it was no more than he might lawfully do: and in that case the law Would extend his possession over the whole: and consequently, any person entering against his will would be a trespasser.
The other exception is of more weight. The defendant commenced his improvement in the year 1796 or 7: and in the year 1800, he petitioned the Court of Common Pleas for relief as-an insolvent debtor. In the schedule of his property he mentioned the grain then growing in the land now in dispute, but made no mention of the land itself. The Judge charged, that this was to be considered as an abandonment “ of his title by improvement.” In this, it -appears to me, there wan error. A man who sets himself on vacant land, without warrant or survey, may, if he pleases, remove from it, and abandon the imperfect right which he had acquired by settlement. In such case the land would be open to the first occupant. But in the' present case, the possession was never relinquished by the defendant, who has remained constantly on the land since the year 1797, and has been assessed and paid taxes for it ever since 1799. Under such circumstances, it is going too far to say, that his not inserting it in the schedule of his property, did, in law, amount to an abandonment of his right. The defendant might possibly have intended it to defraud his creditors by concealing his right. But in that case, it would not be in his power to divest himself of the property, which would pass to his assignees under the insolvent law, whether included in the schedule or not. The-defendant says, that there was no intention to defraud: *411 that the land was left out of the schedule, because he had srold it to Andrew Wilson, from whom he afterwards re-purchased it. This was confirmed by the testimony of Wilson. If the jury believed him, the conduct of the defendant was all right. But if they disbelieved him, it was a fraudulent contrivance between the defendant and Wilson, which could not operate to the prejudice of the defendant’s creditors. The omission of this land in the schedule of the defendant was a circumstance proper to be taken into consideration by the jury. But I understand the Judge as having charged, that it did, ipso jacto, amount to an abandonment of the titl.e acquired by settlement, by virtue of which the land returned to a state of vacancy, and was liable to be taken up by the plaintiffs. I am of opinion, that in this respect the charge was erroneous, and therefore the judgment should be reversed, and a venire jadas ele novo awarded.
Yeates J.
I see no error in admitting in evidence the declarations of an actual settler, that he had sold his possession to a third person, and had received the stipulated consideration. Such parol testimony has often been admitted of the sale of improvement rights. But it has been contended, that under the act of 22d September, 1794, no application can be received for lands, unless they have been previously settled and grain raised thereon: and that of course improvements form one essential feature in the formation of real estates, which can pass only by a written instrument. Fair, honest, settlements have always been regarded by the usages of the proprietary land office : and unless some imposition has been practised, no warrant holder has been permitted to disturb them, where the improvers have been willing to comply with the usual terms of purchase. In the cases of lands held by a complete legal title, the delivery of possession, and subsequent improvements made, have uniformly been held to form exceptions out of our act for the prevention of frauds and perjuries, on which a Court of Equity would decree a specific execution of a parol agreement. The jury must be fully satisfied in these different points. The medium of proof is now the only question before us.
Nor can I see any error in the charge of the Court asserting to the jury, that unless the defendant below came on the land by the consent .of Jonathan Bailey, h.e could obtain no *412 right whatevef thereby, but was in fact a trespasser. The whole must be fairly construed as the testimony applies to case- There were no more than 80 acres of vacant land; and the remark was founded on the supposition, that Bailey was the prior settler on this vacancy. But whether he was such settler, or had given his consent that Gilday should come into possession, were submitted as facts to the decision of the jury. Without such assent, he could not legally come into possession, and thrust out Bailey.
But I view the charge of the Court as incorrect in consi-. dering the omission of the defendant below to return this land in his list of property when he applied for the benefit of the acts of insolvency, as an actual abandonment of his claim. The omission must have proceeded from one of two causes: either that the title had passed to Andrew Wilson to secure his demand of 40 pounds: or with a view of defrauding his creditors. If the testimony would warrant the first conclusion, there would not be the slightest trait of an abandonment; because, having parted with his interest, he could no longer exercise dominion over the lands. If there was a knavish intention of cheating his creditors, and some secret trust existed between himself and Wilson, it qould not affect the just claims of honest creditors, of whom/he had returned a list. It would be monstrous so suppose, that a debtor, applying for the benefit of the -acts of insolvency, should have such a power. The abandonment of an actual settlement ex vi termini, implies atotal desertion of the lands settled upon, and an entire dereliction of all claim thereto, leaving the premises open to other persons desirous to occupy the same. The term was utterly inapplicable to William Gilday under every aspect of the case. His petition was preferred to the Court of Common Pleas on the 17th June, 1800. But it appears he was regularly assessed for the lands in controversy, and had paid the taxes in 1799, and up to the time of trial on the 6th May, 1814. On the 2d March, 1812, he asserts his continued claim before the board of property, and obtains a decision in his favour. So far is he from deserting his possession, that he clings to the soil without intermission, from the time of his first entry up to the present moment, and has defended himself against the pretensions of the plaintiff below. I feel no difficulty in declaring, that his whole conduct is in *413 compatible with abandonment, and the judgment below should be reversed, and a new trial awarded.
Brackenridge J. was sick and absent.
Judgment reversed, and a venire facias de novo awarded.