# M'Call *against* Neely.

To give effect to the statute of limitation, the possession of an occupant, by a colourable title, is co-extensive with his title ; but the possession of an avowed intruder is confined to the land actually occupied by him.

An entry upon a tract of land which had been previously appropriated by warrant, survey and patent, a possession of it for twenty-one years, and the payment of taxes during that time, is a good title to the whole tract.

ERROR to *Alleghany* county.

Ejectment by Sarah M'Call and others, heirs at law of Anna Gibson, against John Neely and others, for a tract of land. The plaintiffs had a legal title from the commonwealth, by patent dated the 27th of February 1787.

The defendants had entered upon the land in 1808, and they, and those under whom they claimed, had resided upon it more than twenty-one years before suit brought, and during that time it had been assessed in their name ; they paid the taxes for the whole tract, containing three hundred and eighty-three acres, and cleared and fenced one hundred and fifty acres. Upon these facts the question arose, whether the possession of the defendants was co-extensive with the whole tract, so as to give effect to the statute of limitation ; or whether it would only protect them to the extent of the land cleared and fenced.

To establish the facts that the land was assessed in the name of the defendants, and that the taxes were paid by them, they offered in evidence the duplicates of that township, and the receipts of the collectors. This evidence was objected to as being secondary : that the testimony of the assessor and collector was the primary evidence ; but the court overruled the objection.

The court below (Shaler, president) was of opinion that the statute of limitations protected the defendants in the possession of the whole tract, and so instructed the jury, who found a verdict accordingly. This opinion, and the admission of the testimony mentioned, were the subjects of the assignment of error.

*Dallas,* with whom were *Colwell* and *Bradford,* for the plaintiffs in error.

The collectors referred to in the first error, who were living, should have been brought forward as witnesses ; otherwise third persons could not be affected. Cluggage *v.* Swan, 4 *Binn.* 150 ; Cutbush *v.* Gilbert, 4 *Serg. & Rawle* 551.

The third error has relation to the charge of the court below, which goes to overrule the case of Miller *v.* Shaw, 7 *Serg. & Rawle* 136.

[M'Call v. Neely.]

The principle settled there, and recognized in many other cases, is, that the possession of the settler without title is restricted to the quantity of land actually occupied.   In favour of a trespasser there can be no constructive possession.   *Tillinghast's Adams on Ejectment* 486—488 ; Hamond *v.* Warfield, 2 *Harris & Johns.* 151 ; Davidson *v.* Beatty, 3 *Harris & M'Henry* 625 ; Barr *v.* Gratz's Heirs, 4 *Wheat.* 213 ; 9 *Martin* 123 ; 4 *Hall's L. Journ.* 128 ; Royer et al. *v.* Benlow, 10 *Serg. & Rawle* 306 ; Read *v.* Goodyear, 17 *Serg. & Rawle* 350.

*Burke* and *Fetterman,* for the defendants in error, the court declined hearing.

The opinion of the Court was delivered by

Gibson, C. J.—To give effect to the statute of limitations, the possession of an occupant by a colourable title, is co-extensive with his title ; but the possession of an avowed intruder is confined to the land actually occupied by him.   Though a settler on appropriated land is not an avowed intruder, his possession extends no further than his actual occupancy, because there is no boundary or any thing else to mark its extent.   In Royer *v.* Benlow, it was not extended to a boundary marked out by the settler himself, because the title remains in the state till the land is measured off to the purchaser.   But a purchaser, whether by settlement, warrant or location, may not measure it off for himself, because there is a public and sworn officer appointed for the purpose, whose duties are necessarily exclusive. A private survey, therefore, being merely void as against the state, cannot give colour of title against any one else.   Constructive possession is an incident of title; and as the title of a settler is attached to no land in particular beyond the bounds of his occupancy, his possession can be carried no further.   Before survey made by due authority, he has but a right of prior appropriation, which he may waive or forfeit by *non user;* and though he may bind himself, as regards his neighbours, to abide by an indicated boundary when his warrant shall come to be laid, as in Gordon *v.* Moore, 5 *Binn.* 136, yet this indication of a future boundary has no operation as a circumstance in passing the title from the state.   Until warrant and survey, he remains as much a settler, notwithstanding a private designation of his boundary, as he was before; and has, according to the principle of Morris *v.* Thomas, 5 *Binn.* 77, but a right of pre-emption which gives no constructive possession till the subject of it has been legally defined.   An apparent exception to this is found but in the case of a settlement on a vacancy containing no more than a settler's allowance, and surrounded by surveys made on lawful authority; which was said, in Gilday *v.* Watson, 2 *Serg. & Rawle* 407, to extend the possession of the settler over the whole.   But the bounds of the settlement were previously defined by the public officer, insomuch that he might return a survey for the settler on a proper warrant, without retracing the lines.   Still as the settler might choose to take but a

[M'Call v. Neely.]

part of the vacancy, his bounds could not be permanently fixed without an actual survey on the ground, or by adoption of the lines already run ; and, without meaning to yield the authority of that case as a decision, I am compelled to admit that the reasoning in support of it is not conclusive.

But though a settler may not extend his possession without a legal survey, may he not abandon that character and acquire a colourable title to the survey of another, and by consequence a constructive possession of the land contained in it ?   A disseisor *ipso facto* gains the freehold of the disseisee; and though the estate thus acquired is tortious, yet, till the wrong is repaired by the reinvestiture of the owner, it has the properties of a rightful one.   A disseisin is " not only the dispossession of the freeholder, but also a substitution of the disseisor as tenant to the lord, and as one of the *pares curiæ* in place of the disseisee."   *Cruise's Dig.* 15.   And though there is much truth in the remark of Lord Mansfield in Taylor *v.* Horde, 1 *Burr.* 110, that " the precise definition of what constituted a disseisin which made the disseisor the tenant of the demandant's precipe *though the owner's entry was not taken away,* was once known, but is not now to be found ;" yet he himself admits that " the consequences of actual disseisin, considered as such, continue law to this day." By the English common law the disseisee cannot dispose of the land or devise it ; and a descent takes away his right of entry.   Though there is, as insisted by Lord Mansfield, an undoubted difference in this respect between a disseisin by election, and an actual disseisin, which makes the disseisor a freeholder in spite of the owner ; and though a descent is necessary in the case of the latter to take away the owner's entry and turn his estate to a right, yet an actual disseisin seems to have the effect, as supposed by Lord Mansfield himself, of creating a tortious freehold in the disseisor even before such descent.   If such then be its effect when disseisin is attended with its original consequences, it must have the effect here of transferring the possession of the disseisee, whether actual or constructive, as entirely as it transfers the estate elsewhere, though with us a descent does not take away the entry of the owner, nor the disseisin incapacitate him to perform any otherwise valid act of alienation.   Though our property is allodial, yet feudal tenures, by which this peculiar effect of a disseisin is produced, may be said to exist among us in their consequences and the qualities which they originally imparted to estates ; as for instance in precluding every limitation founded on an abeyance of the fee.   Granting this, the argument is that actual disseisin extends no further than the actual ouster,'and consequently only to the land actually evicted ; and it must be conceded that of land, an office, and some other estates, though not of a rent, which is entire, there may be a disseisin in part.   But to prevent a disseisin of part from being a disseisin of the whole, the disseisee must have been suffered to remain in the actual possession of the residue ; for such seems to be Dame Pett's case, *Brownl.* 230.   In that case it is

[M'Call v. Neely.]

said *arguendo*, and quoted with approbation by *Viner*, (*Disseisin A*. 3) that " the possession of a house is the possession of the land for the lessee against the lessor of that which passes by one demise ; but if a stranger enters, severs, and parts by metes and bounds, nothing is wrought by the possession of the residue." But if there were no possession of the residue, and the stranger were not to sever by metes and bounds, it is fair to infer that his possession of a part would carry the whole. And it seems there may be a disseisin of a vacant possession even without an entry on it ; as in Plott's case, *Viner, Disseisin C.* 6, where a stranger came to the door of a house locked up by the owner who had left it, and taking the key in his hand, demanded it to himself in fee. This however may have been an elective disseisin. But there may undoubtedly be a disseisin of a vacant possession by entering on it and holding the owner out. In Adams *v.* Lambert, *Viner, Disseisin C.*, *Dyer* 266 *b. S. C.*, a stranger having erected a shop in a vacant plat of the king's manor, and continuing to hold after the king had granted it over, was barely held not to be a disseisor of the grantee, because no one can disseise the king on whom he entered. By these instances it appears that a disseisor gains a colourable title, and that by entering under it he gains the possession of the party held out. The definition of a colourable title, or as it is more frequently expressed, " colour of title," has never, that I know of, been attempted. The words do not necessarily import the accompaniment of the usual documentary evidences; for though one entering by a title depending on a void deed, would certainly be in by colour of title, it would be strange if another entering under an erroneous belief that he is the legitimate heir of the person last seised, should be deemed otherwise: and it would be stranger still if his alienee were deemed to have more colour of title than he had himself. To give colour of title, therefore, would seem not to require the aid of a written conveyance, or a recovery by process and judgment, for the latter would require it to be the better title. I would say that an entry is by colour of title when it is made under a *bona fide* and not pretended claim to a title existing in another. It is impossible to say therefore that a disseisor claiming to be the true owner of a survey, as he may in fact be without being named in the warrant, does not enter by colour of title. These inquiries may be thought more curious than useful, especially with us, where a disseisin is unattended, as I have already remarked, with all its common law consequences. But in its consequence of transferring the possession, it is undoubtedly in force here, and if it were not, to no other part of the law could we go for an analogy. The principle I have thus attempted to enforce, may seem inconsistent with the doctrine of Miller *v.* Shaw, 7 *Serg. & Rawle* 129; but it is to be observed that the court had in view the case of an intruder claiming no more than the rights of a settler, which, it has been shown, give no possession of any thing but the land immediately occupied : and this much it is proper to say in order to restrain the

[M'Call v. Neely.]

generality of expressions used more particularly by myself. These were predicated either of a settler who claims a title of his own origination, or of a mere intruder, usually called a squatter, who claims no title at all; not of one who claims the title of another whose limits have been legally defined by a survey. With this explanation, the principle now asserted will be found consistent with the doctrine of that case.

But may not one who entered originally as a settler or squatter, change the character of his disseisin by exercising acts of ownership under the title of the disseisee, and thus become a desseisor by colour of title? It was said by Chief Justice Tilghman, in Royer *v.* Benlow, and repeated by Mr Justice Rogers, in delivering the opinion of the court in Read *v.* Goodyear, 17 *Serg. & Rawle* 350, that payment of the taxes raises a presumption of ouster from the whole tract; and that the acquiescence of the owner is tantamount to an acknowledgement of such ouster. These dicta, though not conclusive, are entitled to a preponderating weight, as well for the respect we feel for the quarter whence they come, as for their intrinsic good sense. The taxes are usually assessed in the name of the warrantee; and where they are paid by the intruder, it is a direct assertion on the one side, and a concession on the other, of possession under the warrant. But the same consequence would follow from payment of taxes assessed in the name of the occupant. It is the ownership that is taxed; and necessarily the ownership of him who is entitled to the warrant; for the land is never taxed until the title is out of the commonwealth—at least it is the title which guides the assessor in designating the subject of the tax. In the case of conflicting titles, there have been instances of double assessment; and though that is illegal, yet payment of the tax under either title, is necessarily an assertion of ownership under that title. The point has not been directly decided; but we have no difficulty in saying that payment of the taxes for twenty-one years, with the acquiescence of the owner, gives the occupant a title by the statute of limitations to the whole.

The objection to the receipts and assessments, is as unfounded as the exception to the charge. To the rule that payments to any other person than the party to the suit must be proved by a witness, a payment to a public officer is an established exception. Thus it was ruled in Cluggage *v.* Swan, 4 *Binn.* 150, that receipts for payments into the land office, or to deputy surveyors for their fees, are competent evidence when given in the course of the officer's business; and receipts by collectors of taxes must be equally so. The duplicate assessments, being public documents, were evidently proper to lay a ground for the receipts. Thus it appears that none of the assignments of error have been sustained.

Judgment affirmed.