GIRARD (ASTOR v.). See Case No. 595.

GIRARD (HOURQUEBIE v.). See Case No. 6,732.

GIRARD (McCULLOCH v.). See Case No. 8,737.

---

## Case No. 5,458.
### GIRARD v. PHILADELPHIA.
[See 7 Wall. (74 U. S.) 1.]

---

## Case No. 5,459.
### GIRARD v. PHILADELPHIA.
[2 Wall. Jr. 301;[1] 11 Leg. Int. 74.]

Circuit Court, E. D. Pennsylvania. April Term, 1853.

DEVISE OF AFTER-ACQUIRED LANDS—ATTRACTION OF TITLES.

It being admitted that a devise of real estate to which, at the date of the devise, the testator

---

[1] [Reported by John William Wallace, Esq.]

had not a good title; but of which nevertheless he had an actual, notorious and continuing possession, and one that by time might have ripened into title, and under which possession and pretence of title he claimed entire ownership, does not carry the estate as real estate owned at the date of the will; the court here further decides that a good title acquired subsequently to the date of the devise, will not be attracted nor cohere to the old claim or imperfect interest, so as to be merged, or extinguished in it, and so to pass the estate as real estate acquired previously to the date of the will. Payment of taxes for even more than 21 years, without an adverse possession druing that length of time, gives no colour of title; though it defines extent of claim. And so an entry to run lines, &c.

[Cited in Quin's Estate. 144 Pa. St. 458, 22 Atl. 965.]

Nicholson being the owner of 11 tracts of wild land, mortgaged them in 1797 to the Bank of the United States. The bank afterwards bought them in under this mortgage, and in February, 1830, its trustees sold them to Girard, who took deeds describing the tracts in the ordinary way. By his will, made afterwards, Girard left all his real estate to the defendants, the city of Philadelphia, and by a codicil made in June, 1831, and before the date of another deed to him hereafter mentioned, devised in the same way all the estate he should thereafter purchase; a matter, however, which as the law of Pennsylvania was afterwards judicially declared to have always been, he had no power effectively to do.

Prior to the mortgage by Nicholson, the state of Pennsylvania, which was a creditor of his, passed a law which, as was determined in 1833, by the supreme court of the United States (Livingston v. Moore, 7 Pet. [32 U. S.] 469), after a great deal of litigation by the parties to the suit, gave that commonwealth a continuing lien, and under this lien the state of Pennsylvania sold this same property to this same Girard, in September, 1831, sometime after the execution of his will and codicil, leaving his real estate to the city. Girard had thus two deeds for the same property; the earliest one from the trustees of the Bank of the United States, the other from the state of Pennsylvania. This last one contained, along with its terms of "bargain and sell," the terms "grant, remise, release, quit claim," &c.

Until shortly before this last deed, Girard supposed his first deed gave him a good title. He paid a full price. He was the unquestioned owner of 57 other tracts adjoining these 11, and with them constituting one body of land. After the purchase from the bank of these last, he sent an agent to look after the whole body; had all the outer lines carefully run, and some of the interior ones, and built saw mills and small houses on different spots on the 68 tracts, which his tenants constantly occupied for nineteen years. His agent went over each and every tract, including these 11, and protected the whole, which were treated as one body, from trespassers. Girard notoriously paid the taxes for more than 21 years, and was at other expenses up to the time of this trial in October, 1852.

It having been decided by the supreme court of Pennsylvania (Girard v. City of Philadelphia, 4 Rawle, 335) that a devise of subsequently acquired lands passed nothing, Girard's heirs at law [Madeline Henriette Girard, Marguerite P. Lardy, Anne Stephanie De Lentilhac, Alfred De Lentilhac, Fabricius Devars Dumaine, and Marguerite Palmire], represented here by Messrs. J. M. Read, Cuyler, and Guillou, now brought this ejectment, claiming that as Girard's only real title, was acquired after the date of his will and codicil, the lands belonged to them; while Mr. Cadwalader and the city solicitor (Olmsted), for the city, admitting the correctness of the doctrine, that after-acquired lands cannot (independent of a statute) be made to pass by will, propounded the following propositions as sufficient to defeat the claim of the heirs.

That surveys of large bodies of land are good where the exterior lines only are run and marked on the ground. Stevens v. Hughes, 3 Watts & S. 465; Schnable v. Doughty, 3 Barr [3 Pa. St.] 392; Mock v. Astley, 13 Serg. & R. 382. That actual possession of part of a tract under colour of title to all the land within defined and marked boundaries, gives constructive possession to the whole, although the unenclosed part is within the bounds of an elder and better survey. Heiser v. Riehle, 7 Watts, 35; Waggoner v. Hastings, 5 Barr [5 Pa. St.] 300; Kite v. Brown, Id. 291; Seigle v. Louderbaugh, Id. 490. That an entry on two adjoining lots under a deed is presumed to be in accordance therewith, and makes the actual possession co-extensive with the boundaries mentioned in the deed. Hopkins v. Robinson, 3 Watts, 205. That all contingent possible estates are devisable, for there is an interest. 4 Kent, Comm. 511. That independently of the proof of actual possession taken and held by the defendant's testator, the plaintiffs, claiming under him, are estopped from denying that the bargain and sale from the trustees of the Bank of the United States, vested in him the possession from the date of its delivery. Harg. Co. Litt. 273; Co. Litt. pp. 275, 276, 566; Leblyn v. Slack, Bridg. 495, cited in margin; Iseham v. Morrice, 6 Res. Cro. Car. 110. That a party thus in possession with colour of title, is capable of receiving a release of the fee from any holder of an adverse title. Litt. § 469; Co. Litt. 275a; Lampet's Case, 10 Rep. [Coke] 47a; Bradstreet v. Huntington, 5 Pet. [30 U. S.] 434. That conveyances like these to the defendant's testator, made after the date of his will on which the plaintiffs rely to establish their present claim, enure by way of release, or otherwise as may best promote the grantee's interest. Co. Litt. 301b; Chester v. Willon, Sid. 452; Ventris, 78. And see Jackson v. Smith, 13 Johns. 406.

As to any question between parties claiming as heirs, devisees, or in any other manner as mere volunteers, they enure as an extinguishment of the adverse right of the parties conveying, so as to prevent the question, which was the better right from afterwards arising. Brook (Abr. tit. "Mortmain," pl. 38) says, "Abator or disseisor aliens the land in mortmain by license, and afterwards he who has a right releases to the abbot in fee, the lord cannot enter, per Norton; forasmuch as the tenant is in by the first fee or license, therefore the release to him who is in by title goes by extinguishment of the right." Coke's Littleton is to the same point. Page 275a. Release, per mittre le droit, "in some respects enures by way of extinguishment." The acceptance of such a release is not a revocation of a prior devise by the release. (1) It has never been held or judicially said, that a devise was revoked by the acceptance of a conveyance, capable of enuring as a mere release of the right of the grantor. (2) There is no case in which a devise has been held to be revoked by an alteration of the devisor's estate, where he has not himself done an act divesting himself of the estate. (3) There is no case in which the heir alleging that his ancestor's devise was inoperative, has been allowed to call any act of such ancestor in question, or dispute any title of which such ancestor may have claimed to be the holder. Goodtitle v. Otway, 2 H. Bl. 516. (4) If express authorities were required, that it is not a revocation, or that the heir cannot set it up in derogation of his ancestor's prior title, they are found in Jackson v. Ireland, 3 Wend. 99, in New York, and in the old books which show that revocations by alteration of a devisor's estate, where not a question of capacity, is a question of mere intention. And that in the case of a conveyance to such uses as had been declared by the grantor's prior devise, the devise is a good appointment of the use to prevent an escheat, and therefore to bar an heir. Skerrett v. Burd, 1 Whart. 250; Rolle, Abr. 616, Devise Q, pl. 3, 6 Edw. VI.; Dyer, 143 a and b; Winkfeild's Case, Godb. 132, pl. 152; Gibson v. Mutess, Owen, 76; Gybson v. Platless, Goldesb. 32; Hussey's Case, Moore, 789; Mytton v. Lutwich, W. Jones, 7. The rule on the subject is the same at law and equity, and is that a subsequent conveyance does not revoke a prior devise, unless the testator's estate (not right) has been materially modified. Parsons v. Freeman, 3 Atk. 748; Brydges v. Duchess of Chandos, 2 Ves. Jr. 425–431; Harmood v. Oglander, 6 Ves. 222; Jones v. Hartley, 2 Whart. 103.

GRIER, Circuit Justice. The reason why after-purchased lands do not pass by a will, even though the testator has expressed clearly his wish or intention that they should, is not because such a purchase is a revocation of the will, but because a will is in the nature of a conveyance or an appointment of a particular estate, and consequently the testator must have the power to dispose at the time the will is executed. Hence a devise of land, though it operates in future, can pass only such interest or estate as the testator had at the time, and continued to have till his decease. Like a grant of all a man's estate and interest without warranty or covenant of title, it is no estoppel against the grantor or his heirs.

Thus, if a man having an equitable estate in land, devise it, and afterwards purchase the legal title, the latter will descend to his heir; but equity will hold him as a trustee for the devisee of the equitable or usufructuary estate. On the contrary, if the testator have but the legal estate at the time he makes his will, and afterwards purchases the equitable estate, the devisee of the legal estate will be held as trustee for the heir to whom the after-purchased equitable estate descends. There is no extinguishment of the after-purchased title for the sake of enlarging the devise, and the heir is not stopped from averring that the devisee took just such estate or title as the testator had at the date of the execution of his will. Nor can the distinction taken by the counsel of the city between title and estate avail to establish a difference in the present case. A man who has neither possession nor right, has no estate in the land. He who has nothing can convey nothing. It is true that a void deed, which conveys no estate, may be used by one in possession as colour of title and evidence of the extent of his claim, while his whole estate in the land is no more than a naked or tortious possession. It is true also, that by the ancient feudal doctrine of disseisin, a person who has ousted the owner is treated as tenant of the freehold. A disseisin was considered not only as a dispossession of the freeholder, but also as a substitution of the disseisor as tenant to the lord, as one of the pares curiae. But, though some of the consequences of actual disseisin continue to be law in England, yet Lord Mansfield admits that in his day very little was known of seisin or disseisin but the name. In Pennsylvania, where property is allodial, it is still less known or applied, except in its analogies as connected with the statute of limitations and adverse possessions. In England, till lately, the disseisee could not dispose of the land by will or otherwise, and descent cast takes away his right of entry. But such has never been the law in Pennsylvania. Overfield v. Christie, 7 Serg. & R. 177; Humes v. McFarlane, 4 Serg. & R. 435; and McCall v. Neely, 3 Watts, 71. One in possession without right, or merely by disseisin, is considered as "having a something which may be transferred," a naked possession which may ripen into a title by the statute of limitations. But until it has done so, neither his heir nor alienee is in possession by title, tolling the entry of the disseisee or owner. By the feudal law of disseisin, the heir of the disseisor, or his

alienee by feoffment, with livery of seisin, is in actual possession with title, and the disseisee having lost the right of entry, has but a bare right. Whether a release by such a disseisee after devise, would be construed to operate by way of enlargement of the devisees's estate or extinguishment of that of the disseisee, we need not inquire. No case has been brought to our notice containing such a doctrine. But a release from disseisee to disseisor, is in fact the creation of a new estate, being equivalent to an entry and feoffment, and could not be construed to operate by way of extinguishment.

But it is unnecessary to trouble ourselves with these antiquated and obscure doctrines; for, admitting all the consequences claimed from them, they have no application to this case.

1st. Because neither the trustees, nor Girard, under their quit claim deed, had any actual seisin: they had neither possession nor right of possession. The title and estate of the bank was divested by the commissioner's sales, under the Nicholson lien; and the purchasers had the title and the actual possession, or if the land remains vacant, the law cast on them the possession. The trustees were not disseisors, nor was Girard enfeoffed by them with livery of seisin. And though a deed of bargain and sale may be equivalent to such a feoffment, yet where the bargainor had neither possession nor title, no seisin by right or by wrong, his deed could confer no seisin or estate whatsoever on the bargainor.

2nd. The acts of Girard, relied on as giving title, giving the testimony its utmost effect, did not amount to an ouster or disseisin of the owners whether in actual or legal possession. A mere entry upon another is no disseisin, unless it be accompanied with expulsion. An estate by disseisin is got by wrong and injury; and the rightful owner must be expelled either by violence or some act which the law regards as equivalent in its effects. Doe v. Thompson, 5 Cow. 371.

Girard had, therefore, no seisin, no estate, or freehold by right or by wrong, on which a release could operate by way of enlargement, confirmation or extinguishment. His vendor having neither possession nor right could convey nothing to him by his deed. At the time the codicil was executed Girard had no estate which he could convey by grant or devise. The conveyance, subsequent to the codicil, conferred a new and independent title—gave him seisin and right to, or estate in, the land. Then for the first time he became owner of the lands, and had power to convey them.

The proposition which the counsel for the devisees must substantiate, under the facts in this case, must be this: That a man who has purchased a pretended title to land where his vendor had neither possession nor right, and who afterwards purchases from the true owner, and thus becomes seised and possessed, is estopped to deny that he claims by the pretended and worthless title; that this estoppel descends to his heir, and that the good title becomes merged in the bad one, and that in order to assist the devisee as against the heir at law, equity will construe the good conveyance by which alone the grantee has any seisin, estate or title, to be a mere extinguishment of an outstanding claim or cloud on the title. This doctrine cannot be supported by analogy of authority in ancient or modern law.

The case cited from Brooke gives no countenance to such doctrine. For where an abator or disseisor aliens in mortmain by license of the king and lord paramount, and disseisee releases the right to the abbot, it must be observed that the abbot being alienee by livery of seisin of the disseisor, is in possession of the freehold by title. And the entry and feoffment being by license are sufficient to pass the freehold to the abbot as against the king and lord paramount, and all the world except him who hath the right. But his right of entry being tolled, his release, which is of the bare right, will be construed to operate only as extinguishment of his right, and not to the destruction of the estate so as to countervail entry and feoffment by license. Hence the distinction taken "where the abbot himself is disseisor and the king or lord releases, and confirms to him, and then the disseisee releases the abbot. In such case, it seems that the king or lord can enter, for this countervails entry and feoffment, and then there is a new mortmain." In this case the abbot being himself disseisor is not in by title or livery of seisin; the entry of the disseisee is not tolled; his release operates as a feoffment with livery of seisin and confers a new freehold or estate on the disseisee, which being without license is forfeited as mortmain.

It needs no argument to show that these cases, sought out from the lumber garrets of obsolete feudal laws, will afford no analogy or authority for the proposition which the defendants are compelled to establish; in order to success. The principles laid down by the supreme court of Pennsylvania in their construction of this devise, Girard v. City of Philadelphia, 4 Rawle, 335, overrule the positions advanced by defendants and leave their case without a foundation on which to rest. It is there decided, that "the question whether after-purchased lands pass by a previous devise, does not depend on the intention of the testator: that a will is a species of conveyance, and operates only as regards the disposing power and capacity of the testator at the time of its execution, insomuch as to require his power over the estate to be perfect at the time: that the act of disposition must be complete in every respect at the performance of it: that a testator, like any other grantor, cannot give what he has not; and finally, that a subsequent purchase giving the land to the testator, is repugnant to the import of the devise which would give it to the devisee, and therefore

not to be intended to have been in subservience to the will."

These principles rule this case. Girard, by the purchase and completion of this title. defeated and put an end to the uncertain possessor's estate, or right held by him at the time of his devise. No case can be found where the purchase of a fee simple estate after a devise, has been held in subservience to the object of the will, because at the time of making it, the testator had some worthless or pretended claim to it. The law favours the heir at law, and has devised no fictitious extinguishment or estoppel to bar his claim as against the pretended or doubtful claims of the devisee.

Judgment for plaintiff.