## HODGDON *v.* SHANNON.

The validity of a deed of mortgage stands upon the genuineness of the debt described in the condition thereof. It need not exist in the form of a promissory note.

Whether such a debt as was described in the condition of 'a mortgage actually existed, or was due from the mortgagor to the mortgagee, or whether the mortgage was ever foreclosed for condition broken, and the mortgagee subsequently exercised acts of ownership over the premises or otherwise, are proper questions for the jury.

The payment of taxes, procuring a policy of insurance, describing the premises and naming the person to be insured, the act of giving a promissory note to secure against losses, and the payment of assessments to meet losses, are all proper tests of ownership, not conclusive, but competent to be submitted and weighed by the jury.

Declarations of the party found to be in actual possession, explanatory of the character and extent of such possession, are competent to be submitted to the jury.

The filing of a will in the probate office and proving the instrument is good *primâ facie* evidence of the right of the devisees named in such will to hold under it.

The official qualifications of an acting trustee under a will can not be inquired into collaterally by third persons. It is enough that he acts in that office.

The mortgage of the whole estate by one tenant in common is not conclusive evidence of an ouster of the other tenants.

WRIT OF ENTRY, to recover a tract of land in Portsmouth, set off to the demandant, Charles Hodgdon, upon execution, as the property of John N. Sherburne, the judgment debtor, in the spring or summer of 1857.

The defendant, John Shannon, claims merely as tenant of certain devisees of Elizabeth Sherburne, who by her will, approved May 12, 1846, gave her real and personal estate to these devisees, who were the children of her son, the said John N. Sherburne, who was made the trustee to hold the property for the benefit of said devisees.

It appeared that the said Elizabeth and John N. were, even as long ago as 1817, tenants in common in equal shares of the farm of which the tract in question was a part, and that the same was in their possession; that on April 26, 1828, the said John N. mortgaged to the said Elizabeth certain parcels of land, and among them this entire farm, to secure the payment of the sum of $5,000 to the said Elizabeth, without in any other way specifying any indebtedness, nor was any other proof of indebtedness offered at the trial beside what was contained in the deed.

The plaintiff contended that for more than twenty years prior to his extent the said John N. had been in the open, exclusive and adverse occupation of the entire farm, so as to establish the title in him; and also that his acts of ownership and management of the

farm during that period, and for many years before, were inconsistent with the idea of any title in his mother, and that the jury would be justified in finding a conveyance to him of the entire title.

On the other hand, the defendant claimed that the exclusive possession was in the said Elizabeth from about the time of the mortgage to her death, which happened in 1845; and that from her acts of ownership over the property the jury ought to infer a foreclosure of the mortgage.

It appeared that the mother and son lived together, making but one family, and that the son personally managed the farm and took the proceeds, but whether on his own account, or as agent of his mother, was in conflict between the parties.

Among other evidence adduced by the defendant he was permitted, against the plaintiff's exception, to read sundry policies of insurance upon the buildings on this farm, effected in the name of the said Elizabeth, with evidence of the payment of some assessments thereon, and the giving of one premium note by her.

This evidence was received as tending to show the character of the possession of the said Elizabeth, if the jury, upon the whole evidence, found her in possession. And the defendant was also permitted to read a memorandum in pencil upon the back of one of the policies, in the hand writing of the said John N., touching the dimensions or other description of buildings.

The plaintiff objected to its admission, because it did not appear that the memorandum was connected with the policy; but the court allowed it to go to the jury, to be considered by them. At the argument either party might read the policy and memorandum, together with all the other policies, premium notes, and receipts for assessments and title deeds and leases, which were read in evidence by either party.

The defendant was also permitted to read a policy of insurance, dated January 1, 1840, in the Portsmouth Mutual Fire Ins. Company, to the said Elizabeth, insuring her farm, house and barn, near Piscataqua river, occupied by Daniel Pickering.

The plaintiff excepted to the evidence, upon the ground that it did not appear that the buildings insured were upon the farm in question; but the exception was overruled, and there was afterward evidence tending to prove that Daniel Pickering occupied this farm for many years, ending some time in 1840, and there was no evidence that the said Elizabeth possessed or claimed any other farm than this.

The defendant was also permitted, against the plaintiff's exception, to adduce the testimony of a witness who was well acquainted in the family, that he knew of no other property possessed by the said Elizabeth beside the farm and the house she lived in, and that she lived in a genteel style.

The defendant was also permitted to prove acts and declarations of the said Elizabeth, not shown to be in the presence of the said John N., in the nature of an assertion of title to this land, and among them that she had no property but this farm; to which the plaintiff excepted, but the exception was overruled, and the evidence

admitted, to be weighed by the jury only upon their finding her in possession at the time.

The will of Elizabeth Sherburne gave all her real estate to the children of the said John N. then and thereafter born to him by his then wife, and appointed her son a trustee, to hold the estate for the benefit of the devisees; to apply any part thereof and the proceeds to the support, maintenance, and education of said children, in such manner as he should think most beneficial for them; and on their marriage, or arriving at the age of twenty-one years, to set off, assign, pay over, and deliver to them the whole or such part of said portion or share as he shall think proper, and the residue at such time or times afterward as he shall deem expedient.

The defendant was permitted, against the plaintiff's exception, to read the deed of said John N. to the surviving devisees, dated September 2, 1851, by which, after reciting the provisions of the will, and that in educating his son Charles, then deceased, he had expended his full share of the said estate, he releases to said devisees all the interest he has in said estate as heir at law of his said son Charles, and, in pursuance of the power in him vested, thereby determined that all the property left by the said will should belong to the grantees.

Either party were to read at the hearing the said will and deed.

It also appeared, from the certificate of the register of probate, that, except the probate of the will, no further proceedings in the probate court in the settlement of said estate had been had; that no bond by John N. Sherburne, the executor named in the will, had been filed, and no letters testamentary issued.  The defendant was also permitted to read a lease between John N. Sherburne, executor of the will of Elizabeth Sherburne, and trustee of said estate, and one Hodgdon, dated April 2, 1852, demising to him the said farm; the said Hodgdon having testified that it was delivered to him about the time of its date, because he took the farm to carry on at the halves, and that he kept it till after the death of said John N., and that it was in the hand writing of said Sherburne.  He also testified that he did not know why the lease was not continued.  It appeared that Hodgdon did carry on the farm.  The plaintiff excepted to the lease upon the ground that it was not properly executed, but the exception was overruled.  Either party may read the lease at the argument.

Elizabeth Sherburne and John N. Sherburne lived in a house in Portsmouth, and not on the farm in question.

The court instructed the jury that so far as the paper title was concerned, the said Elizabeth at her death owned one undivided half of the property, and held this mortgage upon the other half; and unless she had in some way parted with her title, there would pass to the devisees the beneficial interest in one half of the land absolutely, and in the mortgage interest, whatever it was, in the other.

And no objection was made to the want of proof of the existence of a claim for the sum named in the condition of the mortgage, except what was embraced in the general proposition of the plaintiff, that upon the evidence the jury ought to presume that the

entire title to the whole land had in some way passed to the said John N., and that the evidence showed that the mortgage was fraudulent, and that no debt was actually due from mortgagor to mortgage; but it was not objected that there was no evidence, *primâ facie,* that no debt existed.

Whether the title had passed to John N. or not, was a question submitted to the jury, with the question also of adverse occupation by the said John N.

The jury having returned a verdict for the defendant, the plaintiff moved to set it aside, for errors in the rulings and instructions aforesaid.

*Goodall,* for the plaintiff, took ten different exceptions to the verdict, and referred to the following authorities: *Brown* v. *Cram,* 1 N. H. 169; 1 Phill. Ev. 193, (3d ed.); *Smith* v. *Powers,* 15 N. H. 546; *Shepard* v. *Thompson,* 4 N. H. 213; Rev. Stat. 168, secs. 2, 3.

*W. H. Y. Hackett,* for the defendant, referred to *Furbush* v. *Goodwin,* 25 N. H. 425.

NESMITH, J. This was a writ of entry to recover a tract of land in Portsmouth, purporting to be part of the Pickering farm, so called, which was set off to the demandant upon execution, as the property of John N. Sherburne, the judgment debtor, in the year 1857. The defendant claims the title to the demanded premises as tenant of certain devisees of Elizabeth Sherburne, who, by her will, approved May 12, 1846, gave her real and personal estate to these devisees, being the children of her son, the said John N. Sherburne, who was made, by virtue of said will, the trustee, to hold the property for the benefit of said devisees.

The case finds that so long ago as 1817 the said Elizabeth and her son, John N. Sherburne, were tenants in common, and owners in equal shares of the whole of said Pickering farm, of which the demanded premises were a part; and that the said farm was then in their possession; that on the twenty-sixth day of April, 1828, the said John N. conveyed, by deed of mortgage, the said premises, with other parcels of land, to said Elizabeth, to secure the payment of the sum of $5,000 to said Elizabeth.

At the trial there was no proof of any indebtedness offered beside what was contained in the mortgage deed. The exception is taken by the defendant that there was no sufficient description of the debt in the deed; therefore, no valid mortgage shown. The familiar definition of a mortgage is said to be any conveyance of lands, intended by the parties, at the time of making it, to be a security for the payment of money, or the doing of some prescribed act. 1 Wash. R. P. 479, ch. 16, sec. 7. It is sufficient that there be a subsisting debt between the parties at the time of the contract, which the parties intended to secure, capable of being enforced *in rem,* or *in personam.* The form in which the indebtedness exists is not material. 1 Wash. R. P. 481, sec. 9; *Lund* v. *Lund,* 1 N. H. 39; *Weeks* v. *Eaton,* 15 N. H. 145. In this case it was properly left

to the jury to find whether there was an original genuine indebtedness from John N. to his mother, sufficient to sustain the deed. The deed, when under the signature of the grantor, authenticated by his seal, is construed as his admission to the indebtedness contained in its condition, and is competent *primâ facie* evidence of such fact, and throws the burthen. of evidence on the other side to explain it away.

The questions whether the deed of mortgage could be presumed to be extinguished by the payment of the debt through lapse of time; or, whether any part of the principal debt or interest had been paid within twenty years; or whether intended as a cover, therefore fraudulent; or, whether the mortgagee had actually foreclosed the mortgage for condition broken, and subsequently claimed it as owner, and exercised the ordinary acts of ownership over the premises, were all proper for the jury in cases of this kind. *Jackson* v. *Wood*, 12 Johns. 242; *Giles* v. *Barmore*, 5 do. 545; Ang. on Lim. 493.

We do not see' as the plaintiff was unreasonably limited in any inquiry necessary for him to determine the validity either of the mortgage debt or the deed founded on it. By the verdict of the jury we are to infer both were established. Nor does it appear that any evidence was offered at the trial that any conveyance was made of the share of Elizabeth to her son, John N., prior to the mortgage of 1828. Whether any such conveyance ever existed it is not very material to inquire, as it was competent for said John N. to convey, by mortgage or otherwise, any interest he had in the land to his mother, or any other person.

The plaintiff objects to several acts of ownership, all tending, in the form of admissions or otherwise, to establish the foreclosure of said mortgage, and a good title in Elizabeth Sherburne, when she made her will, in 1845. ' The plaintiff alleges that the evidence of the policies of insurance and note and payment of assessments, &c., given, were incompetent testimony for the purpose of showing actual ownership of the premises in question in Elizabeth Sherburne.

Both parties resort to the proof of legitimate acts of ownership. It is stated that the plaintiff offered evidence tending to show that his debtor paid taxes assessed on the land in dispute. This was suitable evidence for the jury to weigh. *Little* v. *Downing*, 37 N. H. 355; *Farrar* v. *Fessenden*, 39 N. H. 277; *Carr* v. *Dodge*, 40 N. H. 403. The payment of assessments for losses would be evidence of the same character, while the description of the property in the application for the policy of insurance, and the claim of ownership, the giving the note binding the party to pay losses, are all direct acts of ownership, and explanatory of the possession of the party of equally as high a nature. In *McCall* v. *Nealey*, 3 Watts 69, there was an entry by the party, and payment of taxes was relied on to define the extent of the ouster. *Nepean* v. *Doe*, 2 Smith L. C. 493, 496; Ang. on Lim. 425.

The indorsement, as shown here on the policy of insurance to the mother, in the hand writing of her son John N., would have the tendency to show knowledge of her claim and the nature of it, and would so far be construed as an admission consistent with owner-

ship in her, and in disparagement of any claim in himself. The deed of John N. of his son Charles's right in the estate, under the circumstances detailed in the case, seems to us to be competent evience to be weighed by the jury for the same purpose. The same may be said of the lease, whether a perfect or imperfect instrument. It is enough that it showed an act of ownership in conflict with the plaintiff's claim.

We understand the ruling of the presiding judge to be correct in admitting Mrs. Sherburne's declarations, upon the ground that she was first found by the jury to be in actual possession of the premises under her deed. Such declarations are received as explanatory of the character of the possession, and as giving color and limits to the same. In this instance, there was no dispute about boundary or lines; the more material question was whether she was claiming under the deed in question, or otherwise. Declarations consistent or inconsistent with this claim might be offered by either party. 1 Greenl. Ev., secs. 109, 110; *Currier* v. *Gale*, 14 Gray 504.

The exception of the plaintiff that the executor did not file his bond, as required by statute, can not avail, as the evidence shows that the will was proved; and the law is settled that the proof of the will duly passed the estate to the devisees therein named, under whom the defendant claims. 1 Greenl. Ev., sec. 550; 2 Greenl. Ev., secs. 372, 673. Nothing more was required on the part of the executor to perfect the title of the devisees, than to file the will for probate, and to prove it. This duty he is presumed to have performed, as it is usually done before filing his bond.

The plaintiff also further excepts, that said John N. Sherburne could not convey any part of the estate as trustee, as he had not filed his bond, according to the requisition of the statute in such cases provided. The answer to this objection is, that it is enough for the defendant to show that he was a trustee *de facto*, or acted in that capacity. *Jones* v. *Gibson*, 1 N. H. 262; *Johnson* v. *Wilson*, 2 N. H. 205; *Tucker* v. *Aiken*, 7 N. H. 113. The court say, in *Portsmouth's Petition*, 19 N. H. 117, the acts of an officer *de facto*, holding office by color of an election or appointment, are valid as to the public and third persons, and can not be called in question collaterally and except in a proceeding against the officer. *Bean* v. *Thompson*, 19 N. H. 290. We do not see, therefore, that any objections can reasonably be urged to the validity of John N. Sherburne's deed to the surviving devisees, as we understand the law. The will had vested in Charles (the son,) an undivided share of the farm. The father, John N., was the legal heir to the estate of his son Charles, he dying over twenty-one years of age, and he had the power of releasing the same share to the surviving devisees.

The plaintiff further excepts, averring that the court erred in instructing the jury that the paper title was good for one half of the land, at the death of Elizabeth Sherburne, by the mortgage. We do not think the exception states quite fairly what the court did say. By reference to the case it will be seen both parties had the fair presumption arising from the facts. Whether there has or not been an ouster is a question of fact, which it is the province of the jury

to decide. What facts will authorize a jury to presume an ouster is often a matter of law for the court to decide. *Taylor* v. *Horde*, 2 Smith L. C. 497. Here the plaintiff contended that, upon the evidence, the jury ought to presume that the entire title to the whole land had in some way passed to the said John N. Sherburne. Whether it had or had not, was a question submitted to the jury, with the question also of adverse occupation by the said John N. The plaintiff had the benefit of the fact that in 1828 John N. Sherburne undertook to convey by mortgage the whole of the Pickering farm; but a mortgage of the whole estate by one tenant in common is not conclusive evidence of an ouster. *Wilson* v. *Colleshaw*, 1 Harris 276. Upon the execution of the mortgage the whole legal estate in any event was presumed to vest in Elizabeth, the mortgagee. The possession of the mortgager, the mortgagee had the right doubtless to treat as a disseizen at her election; or the mortgager may have been in possession for a time, with the privity and assent of the mortgagee, and in subordination to her title. Then the mortgagee may have set up an exclusive possession, and obtained an adverse occupation of the premises, and established a full and perfect foreclosure. Or, take the plaintiff's view of the case: The mortgager, by some unequivocal act, hostile to the title of the mortgagee, and brought home clearly and distinctly to her knowledge, may have taken open and adverse possession of the premises, and terminated the holding, as mortgager, and actually disseized the mortgagee. The act which is thus to change the character of the possession must be a clear, open, and explicit denial of the mortgagee's title, and a refusal to hold under it; and until such actual disseizin by the act of the mortgager, or by the election of the mortgagee, the possession is not adverse, but in privity with the mortgagee; and the statute of limitations does not begin to run. *Tripe* v. *Marcy*, 39 N. H. 445, and authorities. Whether, under the circumstances as proved, there had been a foreclosure of the mortgage, was a question of fact, properly submitted to the jury.

*Judgment on the verdict.*