## Adam Zubler *versus* Jesse S. Schrack.

The pre-emption rights of a settler on vacant land.

ERROR to the Common Pleas of *Clinton County*.

This case was before in the Supreme Court, and is reported in 10th Casey's R. p. 38, to which reference is made for a statement of the facts. After a second trial in the Common Pleas, where the ruling was in accordance with that of the Supreme Court, it was brought back by the plaintiff, on a writ of error, and the opinion of the court affirming their former ruling and the last judgment of the Common Pleas was delivered by

[Adam Zubler *v.* Jesse S. Schrack.]

THOMPSON, J., whose opinion is not given here, it having been marked to be reported in the State Reports.

WOODWARD, J., dissented, and filed the following opinion:—

Although the learned judge followed our ruling when this case was here before (10 C. 38), and thus performed his whole duty, it is, nevertheless, impossible to support the judgment. View the facts as we may, the conclusion is inevitable that we fell into error in our former ruling, and I think it more becoming to correct the error promptly upon its discovery, than to attempt to palliate and conceal it.

If the case were to be decided upon the statute of limitations, Zubler would be entitled to the judgment, for he went into possession of the land in 1847 or 8, under a deed from Leamy, made when the latter was in actual possession, and claiming the possession of John Herring, commenced in 1832 or '33. The deed, by virtue of which Leamy claims the Herring improvement, was made to him by John Wagner, the brother-in-law of Herring, who, after the death of both Herring and his wife, leaving a family of young children, undertook to settle his estate, and with the assistance of the overseers of the poor, bound out the children. That Wagner had no legal authority to convey Herring's rights in the land, either as the next friend and relative of the orphan children, or as administrator *de son tort*, was correctly asserted when the case was here before, and is not to be doubted now, but it is equally unquestionable that his deed was color of title in Leamy and Zubler. It was evidence that they came in under Herring, claiming his possession, and it might be used to define the extent of that possession against an intruder. To say that it was not a legal title, is to say that it was colorable, and this is all the effect that it need to have to support a title under the statute of limitations as against a stranger. Grant that it would not estop the heirs of Herring, they are not contesting it, nor is the defendant claiming in any manner under them. He is a stranger to their title and an intruder. Zubler, in possession under a colorable claim to their title, was entitled to defend against all new comers, and ought to have been protected in their former suit. From the beginning of the Herring improvement down to that suit, was a period of more than 21 years of continued possession, with an ascertainment of boundaries in 1839 by the Bolinger survey, and whether taxes had been paid or not, that possession and improvement so kept up and continued, was title under the statute of limitations against all the world, except only the heirs of Herring—title not only to the land actually cultivated, but to all the woodland included in the Bolinger survey.

[Adam Zubler *v.* Jesse S. Schrack.]

But this is not a case upon the statute of limitations. There was no evidence of any office right prior to Herring's improvement, and therefore his entry and that of others under him, could not set the statute of limitations a running. It never runs against the commonwealth. He must be regarded as entering on vacant and unappropriated land of the State. And the defendant compels us to so regard it because he took his warrant for vacant land in 1855, and laid it upon part of the land which Bolinger had surveyed for Herring.

Herring then was not an adverse holder under the statute of limitations, but was a settler and improver upon vacant land under the pre-emption statutes. As such he was a favorite of our law. He was entitled to become the first purchaser of three hundred acres of so much vacant land surrounding him, and had a right to designate his boundaries in his own time and manner, so that they should not be unreasonable, nor such as would interfere with other settlers or prior warrantees. When designated, he was bound to stand to them, *Gordon* v. *Moore*, 5 Binn. 136, and neither subsequent settler nor warrantee might come within them. The law would hold him to his boundaries, but would protect him within them. If a warrantee wished to lay a warrant in his neighborhood before the settler had marked his boundaries, it was his duty to call on the settler to mark them, or to point them out if already adopted. No warrant holder is excusable, therefore, for laying his warrant on the woodland of the settler. By virtue of a personal resident settlement with the intention of making it an abode for himself and family, and raising grain on his improvement, the settler acquires the same right to the surrounding woodland which is within his boundaries, not exceeding 300 acres, as he does to the little patch he incloses and cultivates, and the warrantee has no more right to survey that woodland than he has to survey the settler's garden. Such were Herring's rights. On the 15th July, 1839, he caused John Bolinger, a surveyor, to define his boundaries, embracing 165 acres and 80 perches, which included his improvement and the greater part of the land in controversy. Thenceforth that land was his, subject to the payment of purchase money to the commonwealth. He and his wife died in possession, leaving five minor children. This was in 1843.

Now, how was the estate of these children to be preserved? They were poor, and must be bound out to trades, but has the law no means of protecting their inheritance? May it be seized by any man who chooses to purchase a warrant at the land office?

John Wagner, the uncle of the children, put Leamy into possession, and made him the deed, and Leamy put Zubler into

possession, and made him a deed. These deeds were not valid conveyances as against the children, but were they not sufficient to exclude the intention of abandonment? Were they not sufficient to connect and continue the several possessions? Be it that Wagner, Leamy, and Zubler were mere trustees of the orphan children, in behalf of whom equity would compel a conveyance and a surrender of the possession, yet as against Schrack, coming with his warrant in 1855, is not that possession to be supported? This is the question in the cause, and on such a question we cannot perceive how two opinions can be reasonably entertained. Zubler went into possession in 1847 or 8, eight years at least before Schrack took his warrant. Zubler's actual occupancy under color of title that embraced the whole of the Bolinger survey was notice to Schrack that the land was appropriated. If the deeds under which Zubler held were invalid, one of two consequences was inevitable— either that he was holding in trust for Herring's children, or that he was holding for himself as a pre-emption settler—and either way Schrack was excluded. No office right for that land could be granted to Schrack in 1855, simply because it was already appropriated—appropriated in a form which the proprietaries and the State have from the earliest times encouraged—appropriated to Zubler in his own right, or in trust for Herring's heirs, a question which is not now up for decision, and which is quite immaterial to the present issue, for whoever shall hold the Herring improvement, it has never been abandoned, and is therefore a flat bar to Schrack's right.

In the early history of our land titles these improvement rights were regarded as mere chattel interests, were appraised and sold by executors and administrators as such, and such sales have frequently been sanctioned by courts of justice. *McTear* v. *Buttorff*, 4 Y. 300; *Bennet* v. *Denebaugh*, 3 Binn. 186; Sergeant's Land Law, 150, and Judge Kennedy's observations in *Shoemaker* v. *Huffnagle*, 4 W. & S. 442. The later and better view is that they are real interests that descend to the heir and not to the administrator. We so considered this improvement when we pronounced against Wagner's deed on the former hearing. I adhere to that opinion. I hold that deed ineffectual to pass the title. But then I say it was sufficient to fix Zubler as trustee for the heirs of Herring, or else it was an utter nullity, and Zubler was in as if the deed had never been made. In either view he had a good defence against Schrack, and having lost the possession by a snap judgment, he was entitled to recover it in this action of ejectment.

Strong, J., was absent from the argument of the above case, and took no part in the decision.